YOU GOO HO, ALSO KNOWN AS MRS. HO TI YUEN *v.* SAMUEL L. YEE AND EDMUND T. K. ING.

No. 4020.

ARGUED DECEMBER 18, 1958.      DECIDED MAY 29, 1959.

RICE, C. J., STAINBACK AND MARUMOTO, JJ.

OPINION OF THE COURT BY STAINBACK, J.

This is an action for malpractice against two physicians, Dr. Samuel L. Yee and Dr. Edmund T. K. Ing. The jury returned a verdict in favor of defendant Dr. Yee and against defendant Dr. Ing, awarding damages against the latter in the sum of $11,000. From this verdict and judgment Dr. Ing takes an appeal to this court. An appeal was also taken by the plaintiff from the verdict in favor of Dr. Yee but was dismissed by this court because it was not timely. (*You Goo Ho* v. *Yee,* 42 Haw. 229.)

Plaintiff is an elderly Chinese woman who had been treated for a number of years by Dr. Ing as her family physician. In March 1954 plaintiff was taken to the hospital with a severe illness of what was afterwards diagnosed as caused by gall stones as diagnosed by Dr. Yee who was called in by Dr. Ing as a specialist; this diagnosis was also verified in a consultation with Dr. Joseph Strode.

Dr. Yee operated on March 10 for the removal of gall stones with Dr. Ing assisting. After the removal of the stones both from the gall bladder and from the duct, Dr. Yee inserted a French catheter into the wound for drainage purposes. This catheter was furnished by the hospital and examined by the doctors. After the operation both doctors Ing and Yee attended the plaintiff in the hospital and on March 25 the catheter was removed. At the time it was removed from the wound, according to Dr. Yee's testimony, he noticed that the tip of the catheter, about 1¼ inches long, which was rounded and perforated, had failed to come out with the rest of the tube.

The patient was discharged on April 10, Dr. Ing signing the hospital report stating: "Abdominal wound was entirely healed. General condition good. She is discharged today and will follow at home or at office."

Plaintiff contended that the negligent acts on the part of the defendants were, first, failure to remove the tube prior to com-

pleting the operation; secondly, their failure to provide post-operative care and failure to notify plaintiff and her family of the presence of the broken tube in plaintiff's abdomen.

Physicians testified at the trial that if that portion of the catheter were left in the patient's body, one of two things would happen: it would either become encysted or would follow the sinus created when it was inserted and finally extrude. The portion of the tube which remained in plaintiff's body was permitted to remain there until it finally extruded by natural process on May 1, 1955, more than a year after the operation.

Defendant Dr. Ing claimed the court below erred in instructing the jury with respect to *res ipsa loquitur* and in allowing the case to go to the jury on that theory. The defendant pointed out that the breaking of the catheter was not like the "sponge cases" wherein the doctrine of *res ipsa loquitur* had been applied, as the piece of catheter which was accidentally broken off in the patient's body was intentionally left inside her rather than to risk surgery which, in the opinion of the physician, would be dangerous. The particular instruction objected to was number 9 which instructed the jury that if they found plaintiff suffered injury resulting from a portion of the rubber tube being left in her abdomen after an operation, and if they should find *the said rubber tube was under the control and management of the defendants,* the fact of the injury itself would be deemed sufficient evidence to support a recovery *in the absence of any explanation by the defendants* tending to show that the injury was not due to their want of care, etc. Opposition was also made to plaintiff's instruction number 12 that when the doctrine of *res ipsa loquitur* is applicable, the jury may presume negligence in the absence of a reasonable and satisfactory explanation as to how the accident occurred. There were other instructions relative to care after the operation which need not be discussed here.

Without deciding that such instructions were erroneous, no harm resulted from the instructions as the jury necessarily found there was no negligence upon the part of the doctors in the breaking off and leaving of the catheter within the body of the plaintiff as the jury decided in favor of the operating physician, Dr. Yee.

If the negligence was in the breaking off of the catheter and leaving the same within the body, then Dr. Yee was guilty of negligence for he alone had inserted and removed the catheter. The *res ipsa loquitur* instructions related only to the leaving of the portion of the catheter within the body of the plaintiff and not to the postoperative care and attention.

Obviously the jury found Dr. Ing's negligence was in the postoperative care of plaintiff, so even if the instructions were erroneous, as stated in the syllabus in *W. W. Ahana* v. *The Insurance Company of North America,* 15 Haw. 636 (1904), "A new trial will not be granted because of an erroneous instruction to the jury when it appears that the instruction did not affect the verdict."

The next question is whether there is more than a scintilla of evidence to prove that the defendant was negligent in postoperative care and treatment and that such neglect caused damage to the plaintiff.

Several physician witnesses testified that such a wound needed care after the operation and such postoperative care was an absolute necessity and should be checked upon. Without attempting to give in detail the testimony of all of them, we shall point out some highlights in the testimony of some of these witnesses.

Dr. Faus, in testifying that such wound should be watched until healed, stated "I imagine they watched her very carefully." Dr. Strode testified that such wounds needed care and even with patients on the other Islands *he instructed them to come back* to see how they were getting along.

The undisputed evidence of defendant's own witnesses was that there was a duty upon the part of the attending physician to give postoperative care during the healing of the wound and check upon it. Dr. Yee testified the general practice was that the family physician should carry on treatment subsequent to the operation and let the operating physician know if there are any "untoward symptoms that occur." In fact, all the physicians agreed that after such an operation the wound should be watched.

In keeping the plaintiff in ignorance of the presence of the portion of the catheter left in the wound, Dr. Ing testified that at the time the tube was removed it was best not to tell the patient that part of the tube remained in her body because of her nervous con-

dition. However, he did say that she should be informed of such fact at the proper time. Dr. Ing never did inform her of this although she continued to request at each visit she made to him the cause of the unhealed wound, and plaintiff was in constant worry and suffering from some unknown cause.

That Dr. Ing did not make any effort to check plaintiff's condition after she left the hospital is shown by the fact that his first visit was made upon a call by the plaintiff who was suffering from diarrhea. At that time she was told the wound was healing. Likewise, on September 3, the doctor's next visit, was where he was called by plaintiff or her husband. The third visit was September 8 at the doctor's office where plaintiff complained to the doctor of her inability to sleep, of her pain, and that the wound was not healing. She was given no information on this visit either as to the cause of her suffering. The fourth and final visit was September 14th where the doctor visited the plaintiff at her home upon request of plaintiff's husband, where again she was given no information as to the failure of the wound to heal although the doctor admitted that at such visit she complained of the wound not healing. At no time after plaintiff's September 14 call upon Dr. Ing did he make any effort to ascertain plaintiff's condition or give her any reason for her pain and the failure of the wound to heal.

After that, the plaintiff obtained the services of several other doctors.

Dr. Pang testified that the unhealed wound was the cause of plaintiff's nervousness and worry, as likewise did Dr. Sia. Plaintiff was much worried by this condition and thought she was going to die. Dr. Pang testified that from his first visit it was apparent the patient was extremely worried as to why the wound failed to heal. She displayed anxiety symptoms, because of the pain and the unhealed wound, and that such symptoms continued during the balance of his visits until the tube finally extruded.

The doctors testified further that mental anxiety could cause, or at least aggravate, a high blood pressure condition and there was a relationship between heart trouble and high blood pressure. Some of them testified that heart trouble could be aggravated by worry.

Dr. Sia explained that pus could be absorbed into the blood stream under the circumstances and, if so, it would pass through

the kidneys and might affect them.

The pain resulting from her wound and the enclosed portion of the tube might create a hysterical paralysis, according to Dr. Faus, that resulted in an inability to walk.

We need not enumerate the various consultations with the several doctors extending over a period of more than six months, or the fact that although formerly a woman of great physical activity, during this period she was confined to the house.

The plaintiff continued to suffer pain and the wound continued to drain not only over a period of days and weeks, but of months, until the portion of the catheter finally extruded more than a year after the operation.

Certainly if, as testified, this wound was of slight importance, the patient could have been saved nervous worry and aggravation of physical ailments, and large expenses if she had been told what the trouble was. Further, she might have received definitive treatment for the removal of this portion of the catheter—according to Dr. Pang's testimony definitive treatment for removal of the portion of the catheter should have been given if the wound had not healed within six months. As neither the plaintiff nor Dr. Pang knew of the presence of this portion of the tube remaining within the plaintiff, such treatment was not given.

While it may not be the custom, as some doctors testified, to notify a succeeding physician what has been done, the condition of the patient, and what treatment has been given, certainly Dr. Ing made no effort to notify plaintiff, her family or her succeeding doctors, so that future treatment could be intelligently followed up. In fact, he apparently made no effort after plaintiff left the hospital to keep in touch with her progress as all the doctors testified should be done. He made no calls upon plaintiff on his own initiative and at no time instructed her to return at stated intervals. There is testimony of two doctors that one reason such a wound should be watched is that an abscess might develop.

Further, taking the defendant's own testimony that plaintiff should be told at the proper time, there is sufficient evidence for the jury to decide that she should have been informed the reason the wound did not heal.

In *Eislein* v. *Palmer*, 12 Ohio Circuits 725, the statement is made "the reviewing court holds that there was evidence respecting the alleged negligence of the defendant, in not informing the plaintiff of the broken needle having been left in the incision, which should have gone to the jury."

There was substantial evidence, more than a mere scintilla, for the jury to find Dr. Ing failed to give proper postoperative care and that such failure resulted in suffering and large expenditures by the plaintiff. (*Darcy* v. *Harmon*, 30 Haw. 12, 13.)

Affirmed.

*Frank D. Padgett* (*William F. Quinn* and *Robertson, Castle & Anthony* on opening brief; *Arthur R. Reinwald* and *Robertson, Castle & Anthony* with Mr. Padgett on reply brief) for Dr. Edmund T. K. Ing, defendant-appellant.

*Earl S. Robinson* (*Fong, Miho, Choy & Robinson*) for plaintiff-appellee.

---

DISSENTING OPINION OF RICE, C. J.

I would reverse.

It is my opinion that this is not a case where the doctrine of *res ipsa loquitur* is applicable and I cannot agree that, "no harm resulted from the instructions [inclusive of that of the applicability of *res ipsa loquitur*] as the jury necessarily found there was no negligence upon the part of the doctors in the breaking off and leaving of the catheter within the body of the plaintiff as [sic] the jury decided in favor of the operating physician [surgeon], Dr. Yee and he alone had inserted and removed the catheter."

Applying the doctrine of *res ipsa loquitur*, the trial court, over defendants' objection, gave plaintiff's instruction number 9, as follows:

"If and only in the event you should find that the plaintiff suffered injury proximately resulting from a portion of a rubber tube being left in her abdomen after an operation and if you should find that the said rubber tube was under the control and management of the *defendants*, the fact of the injury itself will be deemed to afford sufficient evidence to support a recovery in

the absence of any explanation by the *defendants* tending to show that the injury was not due to their want of care. *Under such circumstances the plaintiff has made out a prima facie case which entitles her to a favorable finding unless the defendants introduce evidence to meet and offset its effects. Should the defendants have introduced such evidence it is for you, ladies and gentlemen of the jury, bearing in mind that it is incumbent upon the defendants to show care, to determine after weighing such evidence whether or not the defendants have rebutted such a prima facie case."* (Emphasis added.)

The foregoing was supplemented by giving, over defendants' objection, plaintiff's instruction number 12, as follows:

"When the doctrine of res ipsa loquitur is applicable, *the jury may presume negligence* in the absence of a reasonable and satisfactory explanation as to how the accident occurred." (Emphasis added.)

Those two above-quoted instructions erroneously placed the burden of proof of nonnegligence upon the defendants, instead of the burden of proof of negligence upon the plaintiff as it should have been.[1]

---

[1] As to *res ipsa loquitur:*

*Lyu* v. *Shinn,* 40 Haw. 198, 203 (1953)

*Smith* v. *McClung,* 201 N. C. 648, 161 S. E. 91, 93 (1931)

*Robinson* v. *Ferguson,* 107 Ind. App. 107, 22 N. E. (2d) 901 (1939)

*Hohenthal* v. *Smith,* 114 F. (2d) 494 (D. C. Cir 1940)

*Cooper* v. *McMurry* (Oklahoma, 1944), 149 P. (2d) 330, 331 (1) and 332 (2, 3)

*Trindle* v. *Wheeler* (Cal. 1943), 133 P. (2d) 425

*Ingram* v. *Harris* (Alabama, 1943), 13 So. (2d) 48

*Williams* v. *Tarter* (Kentucky, 1941), 151 S. W. (2d) 783

As to burden of proof generally:

5 W. & P. Perm., pp. 931-932 and 1959 Ann Pocket Part, pp. 173-175

Among several other instructions given by the trial court which were objected to by the defendants and which the defendant-appellant Dr. Ing has set forth in his specifications of error, were plaintiff's instructions numbers 20, 21, 24, 26, 28, 29, 30, 33, 35-A, 58, 59, and 60.

Without passing on the alleged errors in the giving of others of those instructions, I will say that I deem that the trial court erred in giving number 35-A, as follows:

"General custom of practising physicians and surgeons is not, as a matter of law, in itself, due care."

The rule of law, as I gather it from the cases, is that, in an action by a patient against the physician to recover damages for injury alleged to have been sustained as a result of malpractice the burden is on the plaintiff to prove failure of the physician to exercise the reasonable and ordinary care, skill and diligence possessed by others in the same line of practice and work in a similar locality, was the proximate cause of injury. It is not "general custom," but ordinary care, skill and diligence possessed by others in the same line of practice and work in a similar locality which is the standard to be observed.[2]

I also deem that the trial court erred in giving plaintiff's instruction number 60, as follows:

"Negligence and unskillfulness may be proven by the introduction and application of presumption permitted by law and as I have set forth in these instructions."

Particularly, the giving of such an instruction was an error, because of the preceding instructions based on the erroneous application of the doctrine of *res ipsa loquitur* to the case.

I have made an exhaustive examination of the five volumes of transcripts of evidence and have made a written analysis thereof, which is too long to quote herein, but from which I have come to the conclusion that there was not prima facie proof by the evidence submitted to the jury to warrant a finding of causal relationship

[2] See cases cited *supra.*

between the suffering alleged to have been sustained by the plaintiff-appellee to the doing or failure to do anything by Dr. Ing, defendant-appellant herein.

Mrs. Ho, the plaintiff-appellee, herself testified that she went to the office of Dr. Ing twice after her operation and that there had never been a failure on the part of Dr. Ing to "show up," at any time she called him. She also testified that subsequent to leaving the hospital after her operation she had been treated by Dr. Pang, Dr. Sia, Dr. Lester Yee, Dr. Warren Wong, Dr. Ishii, Dr. Herbert Chinn and Dr. Minn Hing Lee. When asked to tell in what year those doctors were her physicians, she replied:

"A · I can't tell you because if the doctor didn't treat me right I call another doctor."

Doctors testified to her having been treated by them for several ailments, inclusive of, kidney infection, hypertension, swelling of her ankles, heart condition sometimes referred to as arteriosclerosis, hardening of the arteries, which would among other things be attributable to her advanced years. None of such ailments were definitely attributed to her post-operative unhealed wound, and expert testimony was to the effect that there was no causal connection between the catheter having been left in her body and her kidney disease, or her heart disease, or her hypertension, or her arthritis.

It appears to me that the instructions quoted, *supra,* particularly with respect to the application of the doctrine of *res ipsa loquitur* would affect the verdict with respect to Dr. Ing, the appellant herein, so this case differs from the case of *W. W. Ahana* v. *The Insurance Company of North America,* 15 Haw. 636 (1904) which has been cited in the majority opinion in the instant case.[3]

---

[3] 53 Am. Jur., Sec. 676, p. 521, note 9