NESTA M. GALLAS *v.* PEDRO N. SANCHEZ, ALBERT
P. MONIZ, AND MASAO WATANABE, INDIVID-
UALLY AND AS MEMBERS OF THE CIVIL SERV-
ICE COMMISSION OF THE CITY AND COUNTY
OF HONOLULU, AND CITY AND COUNTY OF
HONOLULU, A MUNICIPAL CORPORATION OF
THE STATE OF HAWAII.

No. 4348.

MAY 26, 1965.

TSUKIYAMA, C.J., CASSIDY, WIRTZ,
LEWIS AND MIZUHA, JJ.

OPINION OF THE COURT BY MIZUHA, J.

Plaintiff-appellant Nesta M. Gallas appeals from a judgment on a directed verdict in favor of defendants-appellees Pedro N. Sanchez, Albert P. Moniz and Masao Watanabe, individually and as members of the Civil Service Commission of the City and County of Honolulu, and the City and County of Honolulu, a municipal corporation of the State of Hawaii, whom she sued for special and general damages, alleging that defendants unlawfully dismissed her from her position as personnel director of the City and County of Honolulu.

Two principal questions are involved in this appeal. First, whether Act 207, S.L.H. 1957, changed the position of personnel director of the Civil Service Commission of the City and County of Honolulu from a civil service position with tenure to a non-civil service position without tenure.

Second, whether plaintiff-appellant was legally dis-

missed from her position as personnel director of the Civil Service Commission of the City and County of Honolulu on December 16, 1957.

Plaintiff was the personnel director of the Civil Service Commission from and after January 1, 1953. Act 207, S.L.H. 1957 became law on May 31, 1957. Plaintiff concedes that the Act exempted the position of personnel director from civil service. Plaintiff contends that "Act 207 stated that positions exempt from civil service would not have the civil service status of any incumbent affected except the personnel director as it existed on July 1, 1955. Act 207, however, did not state specifically that the incumbent personnel director would have no civil service status."

Act 207, S.L.H. 1957, amended two paragraphs of section 3-51, R.L.H. 1955, pertaining to civil service employment in the City and County of Honolulu. It added a new paragraph to the list of exempt positions for the City and County of Honolulu as follows:

"(m) Position of personnel director."

The last paragraph of said section, prior to being amended by Act 207, read as follows:

"Nothing in this section shall be deemed to affect the civil service status of any incumbent as it existed on July 1, 1955."

The last paragraph as amended by Act 207 reads as follows:

"[N]othing in this section shall be deemed to affect the civil service status of any incumbent, *except the aforementioned personnel director,* as it existed on July 1, 1955." (Emphasis added to show the words inserted by the amendment.)

Prior to this amendment, all incumbents with civil service status as of July 1, 1955 in the positions exempted

from civil service in the City and County of Honolulu were not to be affected. When Act 207 exempted the position of personnel director from civil service, and added the underscored language in the last paragraph of section 3-51, R.L.H. 1955, the incumbent personnel director did not have further status as a civil service employee. If the legislature chose to do so, Act 207 could have preserved plaintiff's civil service status by not adding the aforesaid underscored language to the last paragraph of section 3-51, R.L.H. 1955, or more specifically by providing that the civil service status of the incumbent personnel director as of the effective date of said Act was not affected.

Plaintiff claims that "Act 207, S.L.H. 1957, is invalid, void and unconstitutional since it is retrospective in its operation by affecting the civil service status and the vested, legal, property and other rights of the plaintiff retroactively to July 1, 1955 on May 31, 1957 [the effective date of the Act] when she has already performed all of her work. * * * Act 207 is in the nature of a bill of pains and penalties since it punishes an incumbent personnel director who has civil service status by forcing the person to give up his job or run the risk of being fired at the pleasure of the Civil Service Commission" and that "due process requires that the plaintiff * * * should be given notice and opportunity to defend herself when she is being dismissed for cause."

It is well established that the legislature, having created the office or public position, may alter its terms or abolish it entirely. *People* v. *Barrett,* 320 Ill. App. 593, 51 N.E.2d 795; *State* v. *Barlow,* 235 Wis. 169, 292 N.W. 290; *State* v. *McCaw,* 137 Ohio 13, 27 N.E.2d 488; *Malloy* v. *City of Chicago,* 369 Ill. 97, 15 N.E.2d 861.

As stated in *Jordan* v. *Metropolitan Sanitary Dist. of Greater Chicago,* 15 Ill. 2d 369, 382, 155 N.E.2d 297, 304-05:

"* * * Generally speaking, public employment does not create property rights subject to the protection of due process. * * * Positions held under the civil service enactments of the legislature are in the nature of offices and the salary created is not property. * * * Civil service status is not a vested right and pensions or annuity benefits expectant upon such status are not vested property rights. Alleged rights of life or liberty are subject to the same limitation when public employment is involved. * * *"

See *Pickus* v. *Board of Education,* 9 Ill. 2d 599, 138 N.E.2d 532; *Dodge* v. *Board of Education,* 364 Ill. 547, 5 N.E.2d 84; *Risley* v. *Board of Civil Service Commission of Los Angeles,* 60 Cal. App. 2d 32, 140 P.2d 167.

In *People ex rel. Reilly* v. *City of Chicago,* 337 Ill. 100, 168 N.E. 904, the civil service commission of Chicago discharged an electric light laborer who had civil service status. The civil service commission refused to prefer charges against him or give him an opportunity to defend himself against such discharge, inasmuch as laborers with civil service status were not included in a statutory provision which required that written charges be preferred against a civil service employee prior to dismissal and that an opportunity be given for the employee to be heard in his own defense. In denying the laborer's petition for a writ of mandamus for reinstatement or in the alternative for an order requiring the commission to prefer written charges against him and allow him to be heard thereon, the court stated:

"Labor has been held to be property. * * * It does not follow, however, that appellant has a property right in the position which he has occupied as electric light laborer. One has no property right in an unearned salary. * * * Positions or places held under the Civil Service Act are in the nature of offices, and the

salary created by the act is not property. The right of compensation grows out of the rendition of services, and not out of any contractual relation. * * * Appellant has not been deprived of the right to sell his labor and to receive compensation therefor. Having no property right in the particular position he occupied, it follows that the due process clauses of the state and federal Constitutions are not violated. * * * [Citations omitted.]" *People ex rel. Reilly* v. *City of Chicago,* 337 Ill. 100, 104, 168 N.E. 904, 906. See *Risley* v. *Board of Civil Service Commission of City of Los Angeles, supra.*

Here, at the time plaintiff was dismissed she did not have civil service status. Prior to the passage of Act 207, she had rights, by virtue of her civil service status, which the courts would protect against unauthorized infringement by the Civil Service Commission. But such rights are not vested rights which are permanently protected by our state and federal constitutional provisions forbidding the impairment of contracts and the taking of property without due process. The rights which plaintiff claims were created by legislative enactment, and may be lost by the repeal of the provisions of our civil service laws or modified by amendments thereto. There is no provision in the public employment laws of this State which provides plaintiff, having only indefinite tenure, with a right of notice and hearing prior to dismissal. At the time of her dismissal plaintiff was serving at the pleasure of the commission.

Act 207 is not in the nature of a bill of pains and penalties. It was competent for the legislature to decide that in this instance the removal of civil service status should not be deferred until the incumbent personnel directors left office, although a contrary decision had been made two years before as to incumbents of other positions.

Such exercise of legislative discretion resulted in a classification which we cannot say was unreasonable. No infliction of punishment was involved. *United States* v. *Lovett,* 328 U.S. 303, clearly is distinguishable, as is *Cummings* v. *Missouri,* 71 U.S. (4 Wall.) 277. We have considered other contentions as to the unconstitutionality of Act 207, S.L.H. 1957 and find them without merit.

Plaintiff also contends Act 207, S.L.H. 1957 violates section 45 of the Organic Act of the Territory of Hawaii "That each law shall embrace but one subject, which shall be expressed in its title." We adopt the statement of the lower court on this point: "Although the title of Act 207 [relating to public service] does not refer with particularity to the amendments included herein, it clearly refers to the general subject matter of such amendments, the chapters of the Revised Laws amended is not misleading and does not embrace more than one subject." *In re Goddard,* 35 Haw. 203; *Territory* v. *Furubayashi,* 20 Haw. 559; *Jordan* v. *Metropolitan Sanitary Dist. of Greater Chicago, supra.*

Plaintiff alleged in her third amended complaint that defendants "Pedro N. Sanchez, Albert P. Moniz and Masao Watanabe, wickedly conspired, combined, contrived and agreed together among themselves and with others to oust the plaintiff from her position of personnel director; that said defendants, Pedro N. Sanchez, Albert P. Moniz and Masao Watanabe, conspired, preplanned and agreed at private and/or secret sessions among themselves and with others as to the dismissal action they were taking as to plaintiff and deliberately withheld such information from Dr. K. C. Choy and Elsie McG. Burke; that Alan L. Goodfader had knowledge about a week and a half prior to December 16, 1957, that an attempt to fire plaintiff was being considered; that said defendants, Pedro N. Sanchez, Albert P. Moniz and Masao Watanabe had already agreed

among themselves before they met at 7:30 p.m. the evening of December 16, 1957, as to the fact that they were to oust plaintiff and went to said meeting with a fixed mind to dismiss plaintiff without any thought to deliberate and discuss the matter of the dismissal of plaintiff with Dr. K. C. Choy and Elsie McG. Burke and therefore proceeded to take the course of action heretofore stated in paragraph 3, that is, to summarily take a dismissal action without notice or hearing given to plaintiff and without giving Dr. K. C. Choy and Elsie McG. Burke the opportunity to deliberate and discuss the matter of the dismissal of the plaintiff; although defendant Pedro N. Sanchez had advised Mayor Neal S. Blaisdell prior to December 16, 1957, that he was proposing a dismissal action of the plaintiff; that all of the acts of said defendants, Pedro N. Sanchez, Albert P. Moniz and Masao Watanabe were committed jointly and pursuant to a conspiracy and their prearranged course of action; * * * That the defendants Pedro N. Sanchez, Albert P. Moniz and Masao Watanabe acted arbitrarily, capriciously and illegally for the reason among others that even if notice of the purported dismissal was given to plaintiff, it would have been of no avail since the defendants, Pedro N. Sanchez, Albert P. Moniz and Masao Watanabe had conspired and preplanned and agreed as to the purported dismissal action of plaintiff prior to December 16, 1957, with no opportunity given to Dr. K. C. Choy and Elsie McG. Burke to know what was being planned or to give them an opportunity to deliberate and discuss the matter of the dismissal of plaintiff."

Plaintiff argues that the dismissal action was illegal. First, R.L.H. 1955, § 3-14 provides that: "* * * No business of the commission shall be conducted, except in meetings open to the public. * * *" Second: "The majority members of the Civil Service Commission cannot take away from the minority members the right to deliberate

and discuss the matter of the dismissal of plaintiff by conspiring, preplanning and/or agreeing prior to the December 16, 1957 meeting of the Civil Service Commission."

The evidence shows that on December 16, 1957, the members of the Civil Service Commission of the City and County of Honolulu were Mrs. Elsie McG. Burke, Dr. K. C. Choy and defendants Sanchez, Moniz and Watanabe. On that date there was a scheduled meeting of the commission to commence at 7:30 p.m. to hear reallocation appeals of civil service employees. At about 7:00 p.m. all of the members of the Civil Service Commission met with plaintiff in plaintiff's office to discuss matters scheduled for a December 18th meeting. Nothing was said then as to plaintiff's status of employment. At 7:25 p.m., after the informal meeting was adjourned, commission chairman Sanchez, asked plaintiff to immediately resign from her position or face instant dismissal. Only defendant Sanchez and the plaintiff were present at this conversation. At 7:30 p.m., defendant chairman of the commission, Sanchez, after duly opening the scheduled meeting ignored the approved agenda for the meeting and immediately proceeded to read a statement calling for dismissal of the plaintiff. The statement was then distributed to the members of the commission, and to a newspaper reporter who was present.

Plaintiff contends that defendant Sanchez' reading of his statement constituted the preferring of charges, and that since charges were preferred she was entitled to notice and an opportunity to meet them even if not so entitled by statute. This is a novel contention. Since the legislature has provided that all business of the commission be conducted in meetings open to the public, any discussion at such meetings of a proposed termination of employment is apt to elicit matters which reflect on the employee concerned if the commission member proposing the same has,

or thinks he has, solid grounds therefor. Inasmuch as the right of discussion is not to be abjured, plaintiff's contention leads to the untenable proposition that, though the legislature took away her tenure and provided that her continuance in office was at the pleasure of the commission, no dismissal at the pleasure of the commission was possible.

All of the commissioners participated in the discussion that followed the reading of defendant Sanchez' statement. Commissioners Burke and Choy voiced their protests and expressed their objections to the recommendation of the defendant chairman. Everyone was given an opportunity to speak up at the meeting. After the discussion, defendants Sanchez, Moniz and Watanabe voted for dismissal. There is no evidence that any of these defendants prevented Choy and Burke from expressing their protests against the dismissal.

The only evidence offered as to the alleged conspiracy to dismiss plaintiff was that a newspaper reporter had advance notice that dismissal action might be taken at that evening meeting on December 16, 1957; that the reporter had called a photographer of the newspaper to be present at the meeting at 7:30 p.m.; that the Mayor was advised by defendant chairman Sanchez sometime prior to December 16, 1957 that plaintiff might be dismissed from her position, and that plaintiff was told by the same defendant just before the meeting to resign or face instant dismissal. Nowhere in the record is there any evidence that defendants Sanchez, Moniz and Watanabe met secretly and conspired to dismiss plaintiff, or that they, all three of them, irrevocably committed themselves to this course of action prior to the December 16th meeting. There is testimony of plaintiff that on the evening of December 17, 1957, she went to see defendant Watanabe at his home and had a discussion with him during the

course of which, as testified by plaintiff: "Mr. Watanabe told me that he had committed his vote to Mr. Sanchez." Giving this testimony every intendment, it at most is some evidence of an agreement between two members of the commission. Concededly, an agreement among three members, a majority, would be required to support the supposed cause of action for conspiracy. The action of two could not constitute dismissal action taken outside a regular meeting.

After a careful review of the record, we find that the evidence is insufficient to substantiate a conspiracy, pre-planning or agreement among defendants prior to the meeting to prevent a discussion on the dismissal. We also have considered the evidence which was excluded and have concluded that admission thereof would not have changed the result.

It is our view from the foregoing evidence that the meeting on the evening of December 16, 1957 was open to the public and that the plaintiff was legally dismissed at a public meeting of the Civil Service Commission.

We do not reach that point in the cases relied on by the plaintiff, such as *Cullum* v. *Board of Education of North Bergen Township*, 15 N.J. 285, 104 A.2d 641, and others which are distinguishable since they involve situations where there was a conspiracy and irrevocable final action was taken prior to a public meeting in the absence of minority members. In the *Cullum* case, *supra*, the court stated:

"* * * The Legislature has unmistakably and wisely provided that meetings of boards of education shall be public (R.S. 18:5-47, N.J.S.A.); if a public meeting is to have any meaning or value, final decision must be reserved until fair opportunity to be heard thereat has been afforded. This in nowise precludes advance meeting during which there is free and full discussion,

wholly tentative in nature; it does, however, justly preclude private final action such as that taken by the majority in the instant matter." 104 A.2d 641, 645.

Specification of Error No. 10 relates to the exclusion from evidence of a witness' opinion as to the effect of a dismissal on a person's reputation. We do not reach the point at issue, which bears on damages. Plaintiff was allowed to show by witnesses prominent in the field of public administration that she enjoyed "an excellent reputation in her field, both locally as well as nationally"; that "she enjoyed a reputation * * * of honesty, sincerity, competence in her field"; that: "As a person that was acquainted with and believed in the philosophy of the merit system [her reputation] was the highest; as an administrator of such a program, it was equally high."

Plaintiff further specifies as error the granting of defendants' motion for a directed verdict on the ground that the motion did not state the specific grounds thereof as required by H.R.C.P., Rule 50(a).

In support of their motion, defendants, after stating that "under the law and the facts the plaintiff has failed to show that she is entitled to recover," not only called to the attention of the court a similar motion that was argued earlier at the close of the plaintiff's case at which time a memorandum of authorities was submitted, but also presented a brief review of the nature of evidence introduced by the defense. Under the circumstances, we are of the opinion that the requirements of the rule were satisfied. The motion and statements of counsel were "sufficiently stated to apprise the court fairly as to movant's position with respect thereto." *Virginia Carolina Tree & Wood Co.* v. *Dunbar*, 106 F.2d 385. *Cf., Guanzon* v. *Kalamau*, 48 Haw. 330, 402 P.2d 289.

Plaintiff further argues that where "the sufficiency of

the complaint has been ruled upon on various motions prior to trial, it establishes the law of the case and is binding on the Court during the course of the trial." Prior to trial, defendants' motion for judgment on the pleadings, based on the third amended complaint, was denied. During trial, defendants' first motion to dismiss which was made after plaintiff's opening statement, was denied. Likewise, the court again denied defendants' motion for a directed verdict at the close of plaintiff's case. At the conclusion of the case, the court granted defendants' motion for a directed verdict.

The phrase "law of the case" as applied to the effect of prior rulings on later action of the court on the same case expresses the practice of the courts generally to refuse to open what has been decided but it is not a limitation upon their powers. *Re Ryan Minors,* 31 Haw. 547, 550, *Fleming* v. *Campbell,* 148 Kan. 516, 83 P.2d 708. Since this is a rule of practice, the courts have the power to depart from it in a proper case. *Perkins* v. *Vermont Hydro-Electric Corp.,* 106 Vt. 367, 177 Atl. 631. It is not such an unyielding rule as to take from the court the power to correct manifest error or plain mistake of serious nature in a previous ruling, but is designed to obviate undue prolongation of litigation. *State ex rel. Beck* v. *Occidental Life Ins. Co.,* 95 F.2d 935 (10th Cir.).

On the subject of the *law of the case,* it is said in 2 Moore, *Federal Practice,* § 12.14, p. 2266, n.11:

> "Law of the case does not, however, have the inexorable effect of res judicata and does not preclude the court from reconsidering an earlier ruling if the court feels that the ruling was probably erroneous and more harm would be done by adhering to the earlier rule than from the delay incident to a reconsideration and the possible change in the rule of law to be applied."

Under Rule 12(b) of the Hawaii Rules of Civil Procedure, defenses may be made by motion at the option of the pleader. "An objection as to lack of jurisdiction of the person, improper venue, insufficient process, or insufficient service of process having been raised by motion and disposed of adversely to the moving party, the ruling becomes the law of the case and hence normally the issue should not be reopened again by motion or at the trial, but should be reserved for the appellate court on appeal from a final judgment." 2 Moore, *Federal Practice,* § 12.14, p. 2266. See *Molesphini* v. *Bruno,* 26 F. Supp. 595 (E.D.N.Y. 1939), 1 F.R. Serv. 12b.25. "But since the objections of lack of jurisdiction of the subject matter, and the absence of indispensable parties go to the very power of the court to hear the case, and the objection of failure to state a claim goes to the merits, and since these cannot be waived, neither the defendant nor the trial court is concluded by a ruling on a motion raising such matters, and the questions may again be considered at the trial if deserving of reconsideration in the light of their great importance." 2 Moore, *Federal Practice,* § 12.14, pp. 2266-67.

Here, the granting or denial of these motions prior to and during the course of trial was dependent on the sufficiency of the pleadings or the sufficiency of the evidence and the last quoted statement is directly in point. We do not view the denial of the previous motions as precluding the court after hearing the testimony of defendants' witnesses from directing a verdict for the defendants at the conclusion of the trial.

Plaintiff cites *Munson Line, Inc.* v. *Green,* (S.D.N.Y. 1947) 10 F.R. Serv. 56g.1, Case 1, 6 F.R.D. 470; *Food, Tobacco, Agriculture & Allied Workers Union of America* v. *Smiley,* 74 F. Supp. 823, *aff'd,* 164 F.2d 922; *Glover* v. *Fong,* 42 Haw. 560, but they are distinguishable on their factual situations.

We have carefully considered other specifications of error and find them without merit.

Affirmed.

*Hiroshi Sakai* (*James H. Kamo* with him on the briefs) for plaintiff-appellant.

*Lincoln J. Ishida,* Deputy Corporation Counsel (*Stanley Ling,* Corporation Counsel, with him on the brief), for defendants-appellees.