# GUADALUPE BULATAO *v.* KAUAI MOTORS, LTD.

## No. 4392.

OCTOBER 22, 1965.

TSUKIYAMA, C.J., CASSIDY, WIRTZ,
LEWIS AND MIZUHA, JJ.

OPINION OF THE COURT BY LEWIS, J.

Plaintiff was injured in getting out of a car when it stalled and caught fire. This was eight days after the car was returned by defendant's garage following repairs. Plaintiff sued in tort for negligence in the making of the repairs. The jury found defendant responsible and awarded $24,554.30 for general and special damages. From the ensuing judgment for plaintiff, defendant appealed.

A principal contention is that there was not more than a scintilla of evidence of negligence on the part of defendant. Defendant having moved in the court below for a directed verdict, and having subsequently moved for judgment notwithstanding the verdict, the denial of these motions brings the sufficiency of the evidence before the court, pursuant to Specifications of Error Nos. 1 and 2.

The car belonged to plaintiff's son, who lived with her at Kekaha, Kauai. According to the testimony of the son the car was running fine prior to being taken to the garage on August 2, 1961, except for the transmission. After it

was taken in for transmission repairs, the garage found the engine was not working right and further repairs were authorized. The timing was checked and adjusted, the carburetor was tuned, and the spark plugs were cleaned. The car was returned on August 9. Subsequently plaintiff's son noticed that the car was "missing." On a trip to Kokee on Saturday, August 12, the car was missing, jerking and backfiring, and after similar trouble on Sunday the car was not driven until plaintiff started out on Thursday, August 17, 1961, the day of the accident.

According to plaintiff's testimony she was driving the car from her home to defendant's garage for further repairs as requested by her son, when the accident occurred. Plaintiff's ultimate destination, she testified, was Lihue, where she had a place of business, a dress shop, and she had with her three passengers going to Lihue. Defendant contends plaintiff really was going to Lihue and not to the garage, as she had passed the turn-off to Koloa where defendant's garage is located. Plaintiff, on the other hand, testified she planned to reach the garage via the Omao Road, having selected that route in order to pick up some bananas at the home of a friend.

The fire occurred as plaintiff was driving up the Lawai hill. The car stalled and plaintiff tried many times to start it. When informed by other motorists that the car was on fire plaintiff panicked. She tried to jump out after pulling on the brake but the car slid back and plaintiff was unable to free herself because a ribbon on her garment caught on the car. She thus was forced to back up with the car and at that point was hit by "something that was hitting back and forth." Finally she was able to secure the car by jumping back in. In getting out a second time, this time with her portable sewing machine, she fell down.

To link defendant with the fire which caused plaintiff to get out of the car in this manner, plaintiff relies on the

testimony of Edwin Shuman, who over objection was qualified as an expert witness. The points made by Mr. Shuman require careful analysis. They are three in number:

(1) Mr. Shuman testified that at the time of his examination of the car on defendant's premises a year or more after the accident[1] there was no air filter in place; an air filter found at that time in the well behind the rear seat[2] had not been burned; in this type of fire an air filter that was on the car at the time surely would have been burned. On this, it is premised that the air filter belonging on the car was not in place when it was returned by defendant to plaintiff's home on August 9, that it was lying loose in the car where it was found a year later.

(2) The fire was caused by defective timing, producing backfiring through the carburetor, according to this witness.

(3) Mr. Shuman further testified that this type of fire could not occur if the air filter were in place, from which it again is argued there was no air filter on the car at the time.

It will be noted that this evidence is entirely circumstantial. More important, it is inconclusive circumstantial evidence. As to the cause of the fire ((2) above), Mr. Shuman's testimony did not rule out the possibility that gas had overflowed the carburetor because of a foreign particle caught in the valve controlling the flow, preventing the valve from shutting off the gas completely. This will cause a car to jerk and the motor to die instead of

---

[1] The car was towed to defendant's garage after the accident and repairs started though there was no authorization for the work on the part of plaintiff or her son. The work was stopped under circumstances hereinafter noted, but the car remained on defendant's premises.

[2] Mr. Shuman testified that there was a "well immediately behind the rear seat," explaining: "This is a convertible type of automobile and there is a well to let the top down in."

idling, as well as causing backfiring. There was uncontradicted testimony that on this car there was no gasoline strainer to filter the gasoline entering the fuel line, as there should have been. In case of overflowing gasoline, a spark could ignite the gas fumes. This type of fire could have been caused even if the air filter was in place. Mr. Shuman's testimony ((3) above) that if an air filter was in place it would have snuffed out the fire, concerned a fire caused as Mr. Shuman envisioned it. Moreover, though Mr. Shuman testified that examination of the wires excluded the possibility of a short, this did not exclude the possibility of a spark starting a fire, according to the witness' own testimony.[3]

As to the air filter found in the well of the car a year after the accident—defendant offered no explanation of this, nor as to the absence of the air filter from its accustomed place under the hood at the time of the examination by Mr. Shuman. One of defendant's employees, Mr. Ishida, testified that the air filter was in place and was not removed when the car was in the shop for repairs the first part of August, and another, Mr. Tateishi, testified that it was in place when the car was brought in after the ac-

---

[3] Mr. Shuman:

"Q. A wire is not shorted unless it is burning, is that your understanding?

"A. It is my belief and knowledge that an electrical current, when you have a short, it is a short between a positive and a negative, which means that the wire will automatically heat up. As to whether it will burn or not depends on another factor entirely. It may just heat up and melt away. It may not start a fire. But a short, in electrical terms, means that the wire must be heated up somewhere along the line. If it is a short, electricity has to continue to flow through it.

"Q. Just one spark of electricity then you don't consider a short?

"A. Not on a spark plug wire.

"Q. On any wire?

"A. Some other wires, yes, but not a spark plug wire.

"Q. Spark plug wires are different?

"A. Yes.

"Q. A spark from a spark plug wire would not be a short, in your terminology?

"A. That is correct, although you can start a fire with it."

cident. And as will appear, two disinterested, unimpeached witnesses testified to seeing the air filter in place after the accident. Again, the circumstantial evidence was inconclusive. The air filter found lying loose in the car may not have been the one that belonged on the car. It may have been a second one. The one belonging on the car may have been in place but removed after the accident. If so, testimony that the one found lying loose in the car had not been burned was beside the point. Lending credence to the view that there were two air filters is the testimony of plaintiff herself, set out in the footnote,[4] which, curiously, was not explored. This suggests that a second air filter may have been lying loose in the back of the car right along. Or as suggested by plaintiff's brief in this court, the one found lying loose in the car may have been put there after the accident for use as a replacement.

It is evident that plaintiff's case depended upon the air filter having been left off the car by defendant at the time of the original repairs. Negligence in adjusting the timing could not have caused the fire without this second factor. The inconclusiveness of the circumstances offered to show this second factor has been reviewed. As seen, there was direct eyewitness testimony that the air filter was in place.

---

[4] Mrs. Bulatao:

"Q. Did you notice any particular parts of the car which were in the car at that time? [Referring to a period of two months or so preceding the date when the car first was taken in for repairs.]

"A. I didn't know anything about a car; but I know whenever I go to work, I always carry some of my materials to the Lihue shop or carry some of my patterns back and forth or my portable sewing machine, and there was some kind of part in the back. It is a two-door convertible and there was some kind of gadget in the back there that was sort of oily, so every time I would take care to put down some kind of paper because otherwise the materials will get dirty, but I didn't know what that was.

"Q. Will you describe that gadget a little more, if you can, please?

"A. It is something round, something like black, and it is shaped sort of like a hat. It is not too big. I almost threw it away because I didn't know what that was; but since it was there in the back of the car, I just left it there."

If this were solely testimony of employees of defendant we might not reach the result reached here, but we have the testimony of an officer of the fire department, Lieutenant Rita, who with two other firemen under him responded to the call reporting the fire. He was the one who opened the hood and extinguished the fire. He then examined the area of the fire. He testified:

"Q. Do you know what an air filter looks like?

"A. Sure I know.

"Q. When you examined the burned area after the fire had been put out, was there an air filter on this car?

"A. I saw one, yes.

"Q. You saw it?

"A. Yes.

"Q. With your own eyes?

"A. Yes.

"Q. Was that air filter in the proper place?

"A. That is right."

\*　　　\*　　　\*　　　\*　　　\*

"Q. In making that check, did you take any special note as to whether or not the air filter was on?

"A. I did.

"Q. Could you give us the reason for that?

"A. I tried to determine the cause of the fire the best I could.

"Q. Was that air filter one of the items you felt it necessary to check?

"A. Yes.

"Q. To go back, are you positive, from what you saw with your own eyes, that the air filter was on and in the proper place?

"A. Yes, I am."

Here was a disinterested witness who gave positive, unimpeached eyewitness testimony. Another disinterested

witness, not as positive, was Police Officer Morris,[5] who with one other officer[6] went to the scene after hearing on the car radio a call from the fire department for police assistance, and arrived after the fire was put out.

Applicable here is the rule stated in 32A C.J.S., *Evidence,* § 1039 at 755-56, that:

> "* * * A fact cannot be established by circumstances which are perfectly consistent with direct, uncontradicted, and unimpeached testimony that the fact does not exist."

*Accord, Pennsylvania R.R.* v. *Chamberlain,* 288 U.S. 333, 340-41; *Esso Standard Oil Co.* v. *Stewart,* 190 Va. 949, 59 S.E.2d 67, 71; *Slaton* v. *Atlanta Gas Light Co.,* 62 Ga. App. 42, 7 S.E.2d 769, 771; *Williams* v. *Ford,* 233 S.C. 304, 104 S.E.2d 378, 382; *Hammit* v. *Westbrook,* 262 S.W.2d 260, 261-62 (Tex. Civ. App.); *Arnall Mills* v. *Smallwood,* 68 F.2d 57, 59 (5th Cir.); *Winn* v. *Consolidated Coach Corp.,* 65 F.2d 256 (6th Cir.); 20 Am. Jur., *Evidence,* Supplement to § 1189 at p. 1043, note 5.7.

---

5 Officer Morris:
"Q. What parts of the car did you look at?
"A. I particularly looked under the hood.
"Q. Is that where the fire was?
"A. Yes."

\*    \*    \*    \*    \*

"Q. When you examined the interior of the engine compartment after the fire, did you notice whether there was an air filter on the car?
"A. I believe there was an air filter, yes.
"Q. Do you know what an air filter looks like?
"A. Yes, I do."

\*    \*    \*    \*    \*

"Q. You indicated on direct examination that you believe that there was an air filter on the car; is this something that you are absolutely positive of or not?
"A. I would have noticed if it was missing.
"Q. And is that the reason why you said that you believe it was on the car, because you likewise believe that you would have noticed if it was missing, is that correct?
"A. Yes."

6 This was Officer Miyashiro, called by plaintiff, who also made an inspection of the car but did not recall whether or not it had an air filter on it. He testified: "* * * I assume it had. * * * Actually I wasn't looking for the air filter particularly, but it didn't seem to be missing."

In view of the evidence given by the disinterested eye-witnesses, the asserted fact that the air filter was not in place could not be established by the circumstances plaintiff relied upon, since they were open to other, reasonable explanations and hence consistent with the testimony of the eyewitnesses that they saw the air filter in place. We perhaps would not go as far as the courts have gone in some of the cited cases, but the present case is a clear one for application of the rule above stated.

It is argued, however, that defendant tried the case on the theory that the air filter found loose in the car, which was produced in evidence as Exhibit L, was burned by the fire. Plaintiff points to testimony of Mr. Carvalho, a witness called by defendant, who was asked by defendant's counsel to look at Exhibit L and tell, if he could, whether this filter was on the car at the time of the fire. The witness gave it as his opinion that "this filter was on the car," it being his view that the filter had been burned. Furthermore, defendant's foreman, Mr. Tateishi, called by defendant, after testifying he saw the car the day after the fire and was "positive" the air filter was on the car at that time, further testified on direct that Exhibit L was "the same air cleaner" he saw on the car when it was brought back to the garage after the accident, and on cross-examination that he had looked for the air filter in the last six months and had found it, "In the back, near the back window," though he did not know who put it there.

Mr. Carvalho was contradicted and Mr. Tateishi was partially contradicted by opinion evidence offered by plaintiff that Exhibit L had not been burned. But not so Lieutenant Rita; though he was positive he saw an air filter on the car when he put out the fire he testified on cross-examination that he did not see any evidence of burning on Exhibit L, from which it must be inferred that Exhibit L was not the air filter he saw. Likewise, if Exhibit L was

not burned it was not the air filter the witness Tateishi saw. He could be wrong about the identity of the air filter and still have seen one in place, as he testified. In any event, the rule we have cited concerning uncontradicted eyewitness testimony can rest, as we have rested it, on the testimony of Lieutenant Rita and Officer Morris; we prefer not to consider the testimony of employees of defendant in this connection. We view the portion of the case wherein defendant endeavored to show that Exhibit L was burned as merely corroborative, and not essential to a motion for directed verdict.

In what way has defendant waived the contention that there was an air filter in place at the time of the accident whether or not Exhibit L was the very air filter? There is no rule of law which prevents a defense on alternative theories, *e.g.*, that Exhibit L was on the car at the time of the fire, alternatively Exhibit L was not on the car but another air filter was. However, a ground not suggested when a motion for directed verdict is made ordinarily cannot be relied upon on appeal. *Cf., You Goo Ho* v. *Ing,* 43 Haw. 330, *affirming* 43 Haw. 289; *Deponte* v. *Ulupalakua Ranch, Ltd.,* 48 Haw. 149, 396 P.2d 826, *affirming* 48 Haw. 17, 395 P.2d 273. We direct our attention to this point.

H.R.C.P., Rule 50(a), requires that: "A motion for a directed verdict shall state the specific grounds therefor." However, the rule does not require technical precision. It is enough if the ground relied upon on appeal was sufficiently stated "to apprise the [trial] court fairly as to movant's position with respect thereto." *Virginia-Carolina Tie & Wood Co.* v. *Dunbar,* 106 F.2d 383 (4th Cir.), followed in *Gallas* v. *Sanchez,* 48 Haw. 370, 405 P.2d 772. The grounds of the motion may be stated in oral colloquy. *Dowell, Inc.* v. *Jowers,* 166 F.2d 214, 216 (5th Cir.) ; *Pickering* v. *Corson,* 108 F.2d 546, 549 (7th Cir.) ; *United*

*States* v. *363 Cases, More or Less, "Mountain Valley Mineral Water,"* 143 F. Supp. 219, 223 (W.D. Ark.). This is because H.R.C.P., Rule 7(b)(1) permits an oral motion when made during a trial. Here, the motion was entirely oral. One ground was the insufficiency of the evidence of negligence. After noting that plaintiff's case "depends solely on the basis of the testimony of Mr. Shuman that the air filter was not on and that the motor was improperly timed," defense counsel reviewed the evidence as to the timing of the motor and continued:

"* * * The second point [made by plaintiff] is that the air filter was not on. Now, this is a theory by Mr. Shuman made from looking at the air filter. We have had testimony by four eyewitnesses, not theoretical possibilities. First, Mr. Ishida, who said he did not take the air filter off. He adjusted the idling of the carburetor with the air filter in place and he left it there. Second, Mr. Tateishi, who said he drove the car and that he could have told then if the air filter was off. It was not off as far as he was concerned. The third witness, Police Officer Leonard Morris, who said it was his job to investigate the incident and inspect the car. He said he would have noticed it if the air filter was gone. He said, 'I believe it was there.' The fourth witness, Lieutenant Frank Rita of the fire department, who said he saw it with his own eyes when he put out the fire, and that means nobody could have come along and put it on during the fire. When he got there, the air filter was on the car. Fifth, the testimony of Mr. Tateishi that when the car was returned to the garage, the air filter was still on. These are eyewitnesses as opposed to theory. I believe on that basis that no reasonable jury could find that plaintiff has fulfilled the preponderance of the evidence; that the one theory plaintiff rests on by one witness has been rejected by

eyewitnesses as just explained by me."

We are satisfied that this fulfilled the requirements of the rule. In arguing that, on the question whether the air filter was in place, eyewitness testimony must prevail against theory, defense counsel sufficiently presented the point now at issue. It would be unreasonable to require a specific statement that defendant insisted on this contention whether Exhibit L was burned or not.

However, we do not find defendant entitled to judgment notwithstanding the verdict. The reason is that the manner in which the case was tried on the part of the defendant was prejudicial to plaintiff, in that defendant appeared to have accepted the hypothesis that Exhibit L was the air filter that belonged on the car. This was a matter of trial tactics. It would have been staking everything on a motion for directed verdict if defense counsel had not taken into consideration that the jury would be impressed by Exhibit L, produced before them, and by the evidence as to its having been found loose in the car, and would be looking for an explanation. Understandably, defense counsel adopted the simplest approach, and endeavored to account for Exhibit L without bringing a second air filter into the case. But the line of questioning that defense counsel pursued was calculated to obscure the fact that there was another possibility, namely that Exhibit L was not the air filter that belonged on the car. In this situation a new trial should be ordered.[7] *Cf., Proctor & Gamble Defense Corp.* v. *Bean,* 146 F.2d 598, 601 (5th Cir.) ; *Dowell, Inc.* v. *Jowers, supra,* 166 F.2d 214 (5th Cir.). Since our remand will be for a new trial, certain other specifications of error, involving points which might

[7] Though a motion for directed verdict has been erroneously denied, the entry of judgment for the movant after a verdict for the opposing party is not mandatory or automatic. A new trial may be ordered. *Cf., Berry* v. *United States,* 312 U.S. 450, 452-53 ; *Cone* v. *West Virginia Pulp & Paper Co.,* 330 U.S. 212, 215; *Fleniken* v. *Great American Indemnity Co.,* 142 F.2d 938 (5th Cir.), explaining the remand in 134 F.2d 208, 212.

arise on the new trial, will be considered.

Specification of Error No. 3 concerns the court's ruling permitting Mr. Shuman to testify as an expert witness on the cause of the fire. It is contended that the court abused its discretion. After review of the record we have concluded that no error of law was committed in admitting the testimony; it was permissible for the court to determine that the objection went to the weight. The general rule has been stated in *Kamahalo* v. *Coelho*, 24 Haw. 689, 694-95; *Goo Kim Fook* v. *Hee Fat*, 27 Haw. 491, 500-03; *Territory* v. *Lewis*, 39 Haw. 635, 637-38. It would serve no useful purpose to review the rule again, or to detail the record here presented.

The point presented by Specification No. 4 arose as follows: Plaintiff brought out that defendant, when the car was towed in after the fire, started work without any authorization to do so on the part of plaintiff or her son, and that the work was stopped because "Mr. Atchison told us to stop work." Defendant moved for a mistrial, contending that "all of a sudden we have insurance in this case." Defendant contends that in a place like Kauai with its small population it was generally known that Mr. Atchison was the local insurance manager of American Factors, Limited. Plaintiff's counsel in fact asked the witness who Mr. Atchison was, but withdrew the question when defense counsel started to object. Meanwhile the witness had mentioned American Factors.

Plaintiff may have had reason to pursue this line of questioning in order to dispel the idea that the work was stopped because it was discovered it was unauthorized, leaving room for the inference that stoppage of the work was due to fear that doing it would prejudice defendant's case. But it was not necessary to bring Mr. Atchison's name or position into the case. It could simply have been brought out that the work was stopped on advice received.

We deem it unnecessary to further review this point, as the situation need not recur.

The remaining specifications concern instructions requested by defendant on the theory of assumption of risk, all of which were refused on the ground that: "* * * [T]hat is an element to be considered as to whether there was negligence. * * * [T]he Court will not instruct anything on assumption of risk insofar as the evidence in the case goes."

The court below thus held that the record presented nothing to distinguish the asserted defense of assumption of risk from that of contributory negligence, and that accordingly there should be no instructions on assumption of risk. We agree. Instructions were given on the subject of contributory negligence. As stated in *Ritter* v. *Beals,* 225 Or. 504, 358 P.2d 1080, 1086:

"* * * Nothing is added to contributory negligence, except confusion, when facts which constitute contributory negligence are pleaded in a separate defense of assumption of risk."

Defendant contends that: "One who voluntarily rides in an automobile, knowing it to be in defective mechanical condition, assumes the risk of injury resulting from the defective condition." But defendant does not assert that this proposition should apply if plaintiff was merely taking the car back to defendant's garage for further repairs as instructed by her son. The question of fault on the part of plaintiff necessarily remains in the case. However it may be in the field of law in which the doctrine of assumption of risk originated,[8] we decline to transplant the doctrine into other fields with any "notion that one who knew (or should have known) of a negligently created

---

[8] See *Ward* v. *Inter-Island Steam Navig. Co.,* 22 Haw. 66, 73-4. Nothing in this opinion has any bearing on master and servant cases, some of which of course are not covered by statute.

risk is barred even though free of fault, *i.e.*, even though a reasonably prudent man would have incurred the risk despite that knowledge." *Meistrich* v. *Casino Arena Attractions, Inc.*, 31 N.J. 44, 155 A.2d 90, 95.

Defendant contends that "Plaintiff voluntarily drove the automobile up the Lawai Hill, knowing it was likely to stall on the hill"; and that "She thereby assumed all risks which might be expected to arise if the vehicle stalled." There is no evidence that the route selected by plaintiff involved more hill driving or greater risk of stalling than if she had taken the first turn-off to Koloa. It boils down to[9] a question for the jury as to whether they believed that plaintiff was not really going to the garage before proceeding to Lihue. If the jury so believed the question was one of prudence in continuing to drive a car in the condition of this car beyond what was strictly necessary. There being no distinguishing feature[10] whereby the defense of assumption of risk has a different application in the present case from the defense of contributory negligence, we join the growing number of courts which decline to permit reliance on both of these defenses where one would serve. *Cf.*, *Meistrich* v. *Casino Arena Attractions, Inc., supra,* 31 N.J. 44, 155 A.2d 90; *Ritter* v. *Beals, supra,* 225 Or. 504, 358 P.2d 1080, 1086; *Frelick* v. *Homeopathic Hospital Ass'n,* 51 Del. 568, 150 A.2d 17 (Del. Super.);

---

[9] As to defendant's contention that: "In addition, the appellee assumed the risk of injury when she elected to attempt to start the stalled car on the hill without placing the automatic gearshift in parking gear or setting the emergency brake * * *," this proceeds into the area of how plaintiff conducted herself in the situation in which she had undertaken to act and is beyond the area of "assumed risk" as worked out by those courts which follow the doctrine. See Prosser, *Torts,* § 55 at 305.

[10] As stated in Restatement of the Law Second, *Torts 2d,* § 496A, comment *d,* there may be differences between the defenses of contributory negligence and assumption of risk, as to availability and governing standards.

We reserve further questions as to the right to instructions on assumption of risk until a case arises in which a meaningful difference in the two defenses appears.

*Felgner* v. *Anderson,* 375 Mich. 23, 133 N.W.2d 136; *McConville* v. *State Farm Mut. Auto. Ins. Co.,* 15 Wis. 2d 374, 113 N.W.2d 14.

We are aware that many courts routinely permit both defenses to be submitted to the jury. See Annot., 82 A.L.R.2d 1218, 1228. Defendant cites *Potter* v. *Brittan,* 286 F.2d 521 (3d Cir.), for that view. But in *Seaboldt* v. *Pennsylvania R.R.,* 290 F.2d 296, 300 (3d Cir.), the court said:

> "* * * The line between contributory negligence and assumption of risk is a difficult one to draw. This Court has recently had occasion to discuss it and to point out that fact. Potter v. Brittan, 1961, 286 F.2d 521."

See also the recent case of *Pritchard* v. *Liggett & Myers Tobacco Co.,* 350 F.2d 479 (3d Cir.).

Defendant also cites *Bouchard* v. *Sicard,* 113 Vt. 429, 35 A.2d 439, 441. In that case, as in *Seaboldt,* there were instructions on both defenses, and the judgment was affirmed. In *Merchant* v. *Unity Real Estate Co.,* 286 F.2d 629 (2d Cir.), a case governed by the Vermont rule, the court found no reversible error when instructions on assumption of risk were refused. The court said:

> "The defendant also complains of the court's refusal to charge some of its requests * * *. It does not appear to us that we need consider the distinction between 'acceptance of a risk' and 'contributory negligence' which apparently the courts of Vermont still recognize. Bouchard v. Sicard, 113 Vt. 429, 35 A.2d 439. The judge did refuse two requests to charge (Nos. 14 and 15), based upon the plaintiff's assumption of risk; but the charge on contributory negligence appears to us to have covered the substance of any 'assumption of risk' in the circumstances of this case. He said that

by 'contributory negligence is meant the doing of something, or the failure to do something that a careful person would, or would not, do under like circumstances and which fault or neglect formed a part of the proximate cause of the accident.' To say further that the conduct of the plaintiff in stepping on the iced edge of the pool might be also treated as the 'acceptance' of any risk involved would not have been any added protection."

We remain unconvinced that we should embark upon a course of action so fraught with difficulty and so purposeless as that presented by the requested instructions under the facts of this case. For example, does the doctrine of assumption of risk carry with it the requirement that for that doctrine to apply plaintiff must have had "an appreciation of the extent of the danger," as is held in Vermont? See *Lewis* v. *Vermont Gas Corp.*, 121 Vt. 168, 151 A.2d 297, 307. Defendant would have us hold otherwise on this aspect of the matter,[11] and would have us apply what we can only regard as an objective standard, the same as in cases of contributory negligence. Here defendant, while generally relying on Prosser, *Torts*, § 55, departs from the precept there stated that: "Knowledge of the risk is the watchword of assumption of risk." Prosser, *Torts*, § 55 at 309. However, under the view we follow this question need not be resolved.

Reversed and remanded for a new trial.

*Burnham H. Greeley (Frank D. Padgett* and *Alexander*

---

[11] Defendant cites *Schinke* v. *Hartford Accident & Indemnity Co.*, 10 Wis. 2d 251, 103 N.W. 2d 73 (1960), but the holding of that case must be regarded as superseded by the rule adopted in Wisconsin in the host-guest situation in *McConville* v. *State Farm Mut. Auto. Ins. Co., supra*, 15 Wis. 2d 374, 113 N.W.2d 14 (1962). Defendant also cites the District Court of Appeals decision in *La Porte* v. *Houston*, 189 P.2d 544 (Cal. App.), but the Supreme Court in affirming the judgment, 33 Cal. 2d 167, 199 P.2d 665, stated that it was making no determination as to whether the giving of the assumption of risk instruction was error.

*C. Marrack* with him on the brief, *Robertson, Castle & Anthony* of counsel) for appellant.

*Bruce M. Clark* (*Edward Stanwood* with him on the briefs, *Clark & Corey* of counsel) for appellee.

---

### DISSENTING OPINION OF WIRTZ, J.

I am in complete accord with the conclusion reached by the majority in the Opinion of the Court that, as a matter of law, there was insufficient evidence of negligence on the part of the defendant to permit or to support a verdict in favor of the plaintiff.[1] However, I am unable to accede to the disposition made of the case in the remand.

The granting of a new trial is not responsive to the errors found by the court to have been committed by the trial judge. The entry of judgment for the defendant is, as it would cure the injury suffered by the defendant under these mistaken rulings. To now deprive the defendant of the judgment he should have been entitled to in the trial court seems not only to be unfair but to be adding insult to injury.

I cannot see the wisdom or propriety of giving the plaintiff another opportunity to try to establish negligence on the part of the defendant under any theory not apparent to her nor reflected in the record. It is also difficult to see how the plaintiff was prejudiced by "the manner in which the case was tried on the part of the defend-

---

[1] This conclusion was reached by the court in its consideration and treatment of the first two specifications of error. The court sustained the first specification of error that "the court erred in failing to direct a verdict for appellant at the close of appellant's evidence and at the close of all the evidence." In considering the second specification of error that "the court erred in not granting appellant's motion for judgment notwithstanding the verdict" the court felt that, despite the insufficiency of the evidence to support the verdict, the defendant was not entitled, under the circumstances of the case, to judgment notwithstanding the verdict.

ant." The plaintiff's burden of proof charged her with the duty and responsibility of proving the negligence of the defendant, while it was not incumbent upon the defendant to affirmatively establish due care on its part.

Unlike *Proctor & Gamble Defense Corp.* v. *Bean,* 146 F.2d 598 (5th Cir.), the plaintiff here was not misled in presenting evidence through the erroneous ruling of the trial judge as to the status and effect of the pleadings constituting admissions and obviating the necessity of proof. Nor can the evidence in this case be characterized as "vague and uncertain" and the jury possibly misled by a "deficient and prejudicial" charge with the resultant probability of a miscarriage of justice, as in *Dowell, Inc.* v. *Jowers,* 166 F.2d 214 (5th Cir.).

There being insufficient evidence of negligence, as a matter of law, the trial judge should have directed a verdict for the defendant and, failing that, to have cured his error by entering judgment for the defendant notwithstanding the verdict in favor of the plaintiff. The only way to rectify the situation and repair the damage done would be to now enter judgment for defendant. *Cf., Brennan* v. *Baltimore & O. R.R.,* 115 F.2d 555 (2d Cir.).

I would therefore reverse and remand for entry of judgment for defendant.