Harriet Jones et al., Respondents, *v.* State of New York, Appellant. (Claim No. 25131.)

Third Department, December 28, 1943.

*Nathaniel L. Goldstein, Attorney-General (Orrin G. Judd, Solicitor-General; Arthur W. Mattson, Assistant Attorney-General, Donald C. Glenn, Deputy Assistant Attorney-General, of counsel), for appellant.*

*William A. Mulvey,* attorney for claimants-respondents.

Schenck, J. The State appeals from a judgment of the Court of Claims entered against it for $2,500, in favor of Harriet Jones, and in favor of her husband, James Henry Archibald

Jones, for the further sum of $1,278. The claims arose out of an assault which occurred January 25, 1938, when an insane inmate of the Hudson River State Hospital escaped and inflicted injuries upon Harriet Jones at her home in the city of Poughkeepsie.

The trial court has found that the assault upon Harriet Jones occurred and the injuries and damages were sustained by reason of the negligence and fault of the State, its officers or employees, without any negligence on the part of the claimant contributing thereto.

It is of interest to consider the background of the insane inmate, Kenneth Pritchard. At the time of the assault he was about thirty years of age. He entered school at the age of seven and discontinued at the age of fourteen, at which time he was in the fifth grade. He was shiftless and irritable and avoided work when possible. At times he was violent and the testimony shows that he had trends of sexual perversion. His condition was diagnosed as psychotic with psychopathic personality, episode of excitement. He was assaultive at times and was potentially dangerous. While thirty years old, his record gives him a mental age of eleven years, four months, and he was considered by the hospital authorities very near the border line of feeblemindedness.

On July 27, 1936, he was admitted to the Manhattan State Hospital, from which he was paroled February 17, 1937. He applied for readmission in March, 1937, and was again paroled in June of that year. On July 23, 1937, he voluntarily presented himself to the Hudson River State Hospital, where his condition was diagnosed as " psychosis with psychopathic personality, episode of excitement."

The Hudson River State Hospital is located in the town of Poughkeepsie and adjoins the city of Poughkeepsie, where claimant, Harriet Jones, resided with her husband and two children. While in the institution Pritchard was assigned to various tasks in the performance of which he appears to have been unco-operative. During September, 1937, he threatened to escape and in November of that year he struck a patient. Between September 21, 1937, and December 9, 1937, he was confined in Ward 18, where assaultive patients and those who have threatened to escape are more closely guarded. Thereafter, he was transferred to Ward 19, from which he escaped the night of the assault. It appears from the evidence, and the court below has found that less dangerous patients were confined in Ward 19 and that there were about 135 patients at

the time of the escape with but one attendant in charge, who by reason of his duties was not always present, and at such times the patients were left unattended. Pritchard escaped from Ward 19 between 8:00 and 8:30 P. M. on January 25, 1938, by means of a key with which he unlocked a door leading to a fire escape. Before unlocking the door it was necessary for him to get out of bed, dress and walk down a corridor, a distance of fifty or sixty feet. Leaving the grounds of the institution, he went to the city of Poughkeepsie and rang the doorbell of the Jones home. Mrs. Jones answered the bell and Pritchard forced an entrance to the house, seized her by the throat and threw her to the floor. He then struck her on the head with a stone, inflicting the injuries for which claim is made. Upon the appearance of Mrs. Jones' two children, who were in bed at the time he entered the house, Pritchard ran away and was later apprehended and returned to the hospital, but not until he had stolen two cars and held up a woman restaurant employee. The attack occurred at about 9:00 P. M., although the escape was not detected until about 9:20 P. M. On the morning following a keyring containing a key which would unlock the door through which Pritchard escaped, together with a key to the operating room and to the mortuary, was found by a hospital policeman a short distance from the fire escape, and during an investigation conducted by the officials of the institution, Pritchard stated that he had used one of the keys found.

The court below found that the possession of the key created an episode of excitement and the escape and assault followed as the result of such excitement. There was ample evidence furnished by the physicians employed at the hospital to sustain such finding. Dr. Kelleher, first assistant physician, testified that Pritchard was likely to assault when in the state of excitement and that the possession of the key suggested to him the idea of escape and that " had he had no key he would not escape." The State stresses the fact that when assigned to employment in the greenhouse, Pritchard could have escaped at various times; however, while he had threatened to escape prior to January 25, 1938, he did not actually do so until he was in possession of the key. Apparently that possession set in motion the trend of insane conduct which resulted in the assault.

Doctor Groon, then Acting Superintendent of the hospital, testified that the possession of the key " gave him a suggestion to do something he should not do " and that such possession was " the activating factor." The key that would unlock the

door to the fire escape had been in the possession of Pritchard for several days. Such a key had been lost and never found and apparently nothing was done about it, at least the locks, which were forty years old, were not changed. Pritchard, himself, at the investigation held subsequent to his return to the hospital stated that he had found the key in the waste paper basket in the greenhouse. In any event, the evidence is sufficient to support a finding that he had this key for several days and had shown it to other inmates of the hospital. An employee of the hospital testified that the keys at the greenhouse were used in the presence of the inmates, who could observe that one of the keys was for the door through which Pritchard escaped.

It is the contention of the State that the events complained of could not reasonably have been anticipated by the employees or persons in charge of the hospital. I am not impressed with this contention. Here was an inmate who during the month of September, 1937, had threatened to escape, one who was assaultive, and at that time it was thought necessary to place him in Ward 18, in which patients who had threatened to escape were confined. Less than a month before the assault he was transferred to Ward 19, which was used for better-behaved patients and had at the most but two attendants. While it was known to the authorities in charge of the hospital that a key had been lost on the hospital grounds where " patients were permitted to stroll in the location where the said key had been lost " no effort was made to change any of the locks in the institution.

While the State is not an insurer of the public, it is nevertheless called upon to protect the community from the acts of insane persons under its care. " Jurisdiction is inherent in the State over unfortunate persons within its limits who are idiots or have been deprived of the use of their mental faculties. It is its duty to protect the community from the acts of those persons who are not under the guidance of reason, and also to protect them, their persons and property from their own disordered and insane acts." (*Sporza* v. *German Savings Bank*, 192 N. Y. 8, 14.) From the evidence in the case at bar the only inference that may be drawn is that the State, through its officials and employees, failed to exercise the degree of care reasonably required in view of the mental condition of some of the inmates of the institution.

A question of fact was presented and the finding of the court below that the State was negligent is amply supported by the evidence.

The decision and judgment entered thereon should be affirmed.

All concur.

Decision and judgment affirmed, with costs.