EXCELSIOR INSURANCE CO. OF NEW YORK, Appellant, *v.* STATE OF NEW YORK, Respondent. (Claim No. 25112.)

LIVERPOOL AND LONDON AND GLOBE INSURANCE COMPANY OF LIVERPOOL, ENGLAND, Appellant, *v.* STATE OF NEW YORK, Respondent. (Claim No. 25113.)

ANTHONY L. WATHLEY, Appellant, *v.* STATE OF NEW YORK, Respondent. (Claim No. 25114.)

Third Department, June 29, 1945.

*John E. Mack,* attorney for appellants.

*Nathaniel L. Goldstein, Attorney-General (Orrin G. Judd, Solicitor General; Wendell P. Brown, First Assistant Attorney-General, Edward L. Ryan, Assistant Attorney-General,* of counsel), for respondent.

HILL, P. J. The Court of Claims has decided that the State is not responsible to the claimants for the property damage suffered when the lumber yard and buildings of claimant Wathley were destroyed by fire kindled on the night of February 19, 1936, by a mental defective who had escaped from the Wassaic State School through the asserted negligence of officers and employees of the State. The other claimants are the insurance companies which have in part paid the losses suffered by the owner. Flood, a moron and mental defective, together with about a dozen other inmates of the school, was permitted by the nurse in charge, to go to the basement to smoke. She lighted the cigarettes as Flood and his companions were not permitted, under the rules of the institution, to have matches in their possession. He had a long record of escapes from an orphan asylum at Lackawanna, N. Y. where he had been placed at the age of nine, and from the Rome State School, where he was confined from December, 1926, until he escaped in October, 1935, and was picked up in the vicinity of the Wassaic State School and there confined until the time of the fire. While at the Rome school it had been found necessary to keep him in a locked ward, but even so, the record shows that he escaped eight or nine times, while he says that the number was fifteen or twenty. He also had once before escaped from the Wassaic institution. The nurse was not informed of Flood's proclivities, although his record was known to those in charge of the school. The windows in the basement were unguarded.

The State, its employees and agents failed to exercise reasonable care to prevent Flood's escape, and negligently permitted him, in violation of the rules of the institution, to have matches in his possession. His I. Q. was much below his actual age, and the record sustains the contention that his mental condition was deteriorating. His ancestry was bad — his mother had been in a State institution for mental delinquents.

The State undertakes to look after and care for morons and mental defectives. (N. Y. Const., art. XVII, § 4; Mental Hygiene Law, § 2, subd. 3.) It has jurisdiction and a duty not only to protect these unfortunates from their own disorderly acts, but also to protect the community from their depredations. (*Sporza* v. *German Savings Bank,* 192 N. Y. 8, 14; Mental Hygiene Law, *supra.*) The school authorities had information that Flood had been guilty of pilfering and other mischievousness, and of his marked mental deficiency, but exercised little or no care to prevent his escape, as he and others of his mental capacity were placed in a room where the windows were unlocked, with no one in charge.

The State seeks to avoid responsibility for this damage because upon previous escapes he had not committed major crimes or been guilty of vicious acts, distinguishing *Weihs* v. *State of New York* (267 App. Div. 233) where the escaped inmate from a State hospital who stabbed a pedestrian on the highway had earlier been classified as dangerous and assaultive, and *Jones* v. *State of New York* (267 App. Div. 254) where an escaped inmate from a State hospital who assaulted a housewife had previously displayed vicious tendencies.

The temperature was sub-zero on the night of Flood's escape. He was not warmly clad, and having matches in his possession, which were forbidden him, as the State recognized the danger therefrom, kindled the fire for warmth at a place where one possessed of reason would have understood the danger. The nurse in immediate charge of his group had no previous knowledge of his escapist proclivities, although his record was in the possession of the institution. His possession of matches was likewise possible only through the negligent and careless acts of other State employees. To make the State liable for the damage, it is not necessary that the negligent agents and officials should have anticipated the exact nature of the act which would bring loss to others, for they knew that this young man upon whose mind the light of reason had never fully dawned, was dangerous to the welfare of the public, and being lightly clad and out of doors in the sub-zero weather, would not hesitate to enter a building for warmth and possessing matches, to light a fire. The legal liability here shown is not distinguishable from the cited cases. There is no dispute as to the damages suffered by each of the claimants, and this court should award judgments.

All concur.

Judgment in the Court of Claims dismissing the claim on the merits of Anthony L. Wathley against the State of New York is hereby reversed, with costs, and Anthony L. Wathley is awarded a judgment of $6,900.09 and costs against the State of New York.

Judgment in the Court of Claims dismissing the claim on the merits of Excelsior Insurance Co. of N. Y. against the State of New York is hereby reversed, with costs, and Excelsior Insurance Co. of N. Y. is awarded a judgment of $800 and costs against the State of New York.

Judgment in the Court of Claims dismissing the claim on the merits of Liverpool and London and Globe Insurance Company

of Liverpool, England, against the State of New York is hereby reversed, with costs, and Liverpool and London and Globe Insurance Company of Liverpool, England, is awarded a judgment of $2,500 and costs against the State of New York.

The Court of Claims made one decision applicable to the three claims and the State presented one set of proposed findings applicable to all three. This court reverses findings numbered 5, 9, 10, 11, 12, 13, 14, 15, 16 and 17 contained in the decision, and findings numbered 11, 12, 13 and 14 made by the Court of Claims from the proposed findings submitted by the State, and this court makes the following new findings of fact: That the escape of Francis J. Flood from Wassaic State School on February 19, 1936, through an unbarred and unlocked window, with matches and cellophane in his pocket, and the resultant fire on the premises of Anthony L. Wathley, were occasioned by the negligence of the officials and employees of said institution in failing to take reasonable measures to guard against the escape of the moron and mental delinquent whose mental condition made it unsafe for him to be at large.

The Court disapproves the conclusions of law numbered 1 in the decision, and numbers 1, 2, 3 and 5 in the State's proposed decision.