JAMES F. VAN VOOREN, Appellant, v. GEORGE COOK et al., Respondents, et al., Defendants.

Fourth Department, December 31, 1947.

*William L. Clay* for appellant.

*Ellsworth Van Graafeiland* for respondents.

HARRIS, J. The plaintiff appeals from a judgment of no cause of action in favor of the respondents and from an order denying a new trial, such order being the result of a motion on the usual grounds to set aside the verdict and on the refusal of the Trial Justice to set aside the verdict because of claimed errors in refusals to charge.

The action is one in assault and battery which the plaintiff alleged was committed on him by the defendant George Cook, while such George Cook was insane. The defendant Cook, at the time of the alleged assault, was an inmate at Brigham Hall, the institution conducted by the defendant, Brigham Hall Hospital, Inc., for the confinement and care of persons suffering from nervous and mental diseases. At the opening of the trial (for reasons unexplained in the record) the plaintiff moved for and consented to the dismissal of his action against the Brigham Hall Hospital, Inc., with costs. The verdict of no cause of action was in favor of the remaining defendants.

Although civil actions in assault and battery are fairly common in litigation, the peculiar facts surrounding the cause of action alleged herein are out of the ordinary and in some respects constitute a case of original or initial impression.

The verdict being in favor of the defendants-respondents, it becomes necessary to determine this appeal from the aspect of the facts presented to the jury most favorable to the defend-

ants-respondents. The defendant Cook was a member of a family financially interested in the defendant corporation. In his early years, he had lived with his family at Brigham Hall, and about 1931 he became an inmate for treatment at that institution. Apparently, he was a casualty of World War I. He was not a patient continually from 1931 to the time of the alleged assault and battery, but at times between those years he would have recurrent attacks of depression or overactive mentality, and during such periods he was committed to and confined at Brigham Hall Hospital. One of the results of his overactivity was a propensity and inclination to assault persons. His defects and propensities in mentality were known by the management and physicians of Brigham Hall. For some twelve years prior to December, 1934, the plaintiff ran a city refuse service in the town of Canandaigua, but due to the economic conditions he dropped that occupation, and in December, 1944, began work as an attendant in Brigham Hall. Among his duties, was waiting on patients at their meals and for other purposes, making beds and cleaning floors and halls. At the time that he was employed, he was informed by the chief attendant who took him into the employ at Brigham Hall that the institution was one which took care of cases of mental and nervous diseases; that he was to treat and comfort the patients the best he could and to help them along; that there were some good patients and some bad patients; he was told to be careful with his keys and told that certain patients were locked up and that at that time one of these patients so locked up was George Cook, and that the plaintiff was never to go near Cook's room alone. His employment for the first two weeks was in what were the good wards, or wards for patients who were well behaved. About the middle of January he was assigned to Four Hall where George Cook was confined. He remained as an attendant in that ward, which was for patients not well behaved, until the day of the alleged assault, January 19, 1945. Four Hall had individual rooms for six patients, one of whom was George Cook. Normally, these six patients ate together at a table in a hall, adjoining their rooms, known as Four Hall. For some time prior to January 15, 1945, George Cook was rather quiet and did some shop work and some pleasant reading and played pool; during this time he had many contacts with the plaintiff; about the 15th Cook began to show some slight change and those at the hospital, who knew him well over a period of years, knew

that he would become restless, irritable and obstreperous. At that time Cook was being given some electric treatments that irritated him. This specific information as to the change of condition of George Cook and this treatment was not conveyed to, or known by, the plaintiff. On the 19th day of January, 1945, the plaintiff and a senior attendant, named Davis, had charge of Four Hall and the rooms adjoining the same, including those of George Cook and five other patients. On that day, these patients, including George Cook, ate their breakfast and their luncheon at the common dining table in Four Hall, and were served by Davis and the plaintiff without any untoward incident; this had been so in the days immediately preceding January 19th. When it came dinnertime, late in the day of January 19th, the plaintiff went to the room of the defendant George Cook (the plaintiff says he did that on the instructions of Davis, and Davis denied giving such instructions) unlocked the door and asked Cook to come out and get his dinner or supper. Cook was sitting on his bed with his legs folded under him and mumbled something not understood by the plaintiff; the plaintiff left the door open, went back to the hall, helped Davis feed the rest of the patients. A few minutes later, the plaintiff again went to the room where he found Cook sitting in the same position as on his earlier visit; he then asked Cook to come out for his dinner; Cook mumbled something and asked the plaintiff to help him off the bed. As the plaintiff approached Cook for the purpose of helping him from the bed, Cook made a violent attack on the plaintiff which culminated in injuries to the plaintiff. The seriousness of such injuries would have been a question of fact for the jury, if it had reached a verdict for cause of action. As a culmination of the attack on the plaintiff by the defendant Cook, those in charge of the hospital and ward came and put Cook into a camisole or strait jacket. It is for this attack by Cook on the plaintiff that the latter sued herein.

On his part, the plaintiff alleged and proved a prima facie action in assault and battery against the defendant Cook. This is one of the type of actions in tort for which an insane person is liable. (See 1 Cooley on Torts, § 98; Reeve's Domestic Relations, p. 386; Buswell on Insanity, § 355; Clerk & Lindsell on Torts [9th ed.], p. 47; Sealy on Torts, § 27; *Williams* v. *Hays,* 143 N. Y. 442, and cases therein collated; *Morse* v. *Crawford,* 17 Vt. 499.) The consensus of opinion expressed by the American courts, including those of New York State, is that

public policy places upon one suffering from a defective reasoning the same liability for torts of this type as it places upon those who are of normal mentality. The basis of the reasoning for this rule is that everybody is entitled to be protected against an invasion of his person, and, if the tort is committed by an insane person, there is no reason why the person who is offended against by the tort should stand a loss instead of the offending actor, and the liability placed upon insane persons may be an incentive to those interested in the insane person's person or property to guard against loss to society and the insane person. (*Williams* v. *Hays,* 143 N. Y. 442, and cases therein collated.)

Consent to an invasion of one's person is in some jurisdictions a defense against an action in assault and battery. (*Pillow* v. *Bushnell,* 5 Barb. 156; *Barton* v. *Bee Line, Inc.,* 238 App. Div. 501; *Ford* v. *Ford,* 143 Mass. 577; *Wright* v. *Starr,* 42 Nev. 441; *Weaver* v. *Ward,* Hob. 134.) It is to be gathered from the trend of authority in New York State that, even though consent were a defense, the physical attack must not exceed the consent. Justification in the way of self-defense .may be a defense in an action for assault and battery, but only to the extent made necessary to an innocent party because of an attack. In the action before this court, there is introduced by the defendants-respondents and the charge of the trial court herein another element, i. e., that of invitation to commit an assault. A careful search shows no adjudicated cases in this State supporting the theory of invitation to commit the assault. The trial court herein charged the jury as follows: "If you find from the evidence in this case that the plaintiff Van Vooren had been instructed that, at these times when George Cook was confined to his room by reason of his disturbed mental condition, he, Van Vooren, should not enter the room unless accompanied by another attendant, then you will determine whether or not the violation of that order or instruction by Van Vooren constituted an invitation by him for the alleged attack by Cook. If you find that it did, then your verdict will be no cause of action in favor of the defendants. That is, if you find that he was given instructions not to go there unaccompanied by another attendant, and that he did go in nevertheless, alone, then it would be for you to say whether or not that violation of the order constituted an invitation by him to the alleged attack, and if it did, then your verdict would be no cause for action." Even though such an instruction, in an appropriate case, could be of avail to the defendants on trial, it must be borne in mind that no court in this State has recognized the defense of invi-

tation. It may be argued that if a cause of action lies so as to compensate an innocent person for an injury by a wrongdoer, even though the wrongdoer be insane, then an invitation by the plaintiff might cease to make him an innocent party to the assault. Even though invitation could be a defense, the undisputed facts herein show that there was no such invitation. The defendants-respondents spell out an invitation from the fact that the plaintiff went into this room knowing that at times the patient Cook would be violent, but the record shows that when the plaintiff went into the room to summon Cook to his evening meal, such entry was made without any knowledge on the plaintiff's part, of the then present irritability and over-sensitiveness of the defendant Cook. Perhaps, if the plaintiff knew of the then present dangerous condition of Cook's mind, his going into the room, unassisted, might be regarded as a walking into danger and inviting danger, but in the state of this record it is not necessary to pass on this question. It must be said, as a matter of law, that the plaintiff's entry into Cook's room, for the purpose of summoning him to dinner, and his endeavor to help Cook get on his feet, did not constitute an invitation for Cook to assault the plaintiff. The general attitude of the defense and of the court in the trial of this action, was to regard invitation or consent as a defense; the facts in the record and the law do not bear out the availability of such a defense on the trial. It, therefore, becomes necessary that the verdict herein, and the orders denying a new trial, be reversed, and the motion for a new trial granted.

The respondents contend that the appellant is bound by the portion of the charge, in reference to invitation or carelessness, as above quoted. (Civ. Prac. Act, § 446; *Dudar* v. *Milef Realty Corp.*, 258 N. Y. 415.) The answer to that contention is twofold: The record and the request to charge all show that the plaintiff (now appellant) did not acquiesce in that ruling of the trial court; secondly, even if he did so acquiesce, there are no facts in the record to sustain a finding based on such a ruling and charge.

The judgment and order should be reversed on the law and the facts, and a new trial granted, with costs to the appellant to abide the event.

All concur, except TAYLOR, P. J., and LARKIN, J., who dissent and vote for affirmance in the following memorandum: Reading the charge as a whole, while the court used the term " invitation ", it is evident that the thought conveyed to the jury was,

that by reason of plaintiff's employment as an attendant in a hospital caring for the insane, coupled with the testimony that he was specifically told never to go to Cook's room unless accompanied by another attendant and, also, that he had learned from other attendants prior to the date of this assault that at times Cook was dangerous and hard to handle, the jury could find that when in violation of this rule he went into Cook's room alone, all the circumstances so found would justify a finding of consent on plaintiff's part to any physical invasion of his person which Cook might make. While there can be no question of the rule that a lunatic is as responsible for assault and battery as a sane person, nevertheless, there can be no assault and battery where one voluntarily engages in an encounter in which that may inevitably result. (1 Restatement Torts, § 13, cf. *McGuire* v. *Almy,* 297 Mass. 323.) Since one of the main reasons for imposing liability upon lunatics for their torts is that such a course tends to make those who should have an interest in the insane person, and so possibly interested in his property, watchful of him, certainly that basis is not present here. It seems harsh to impose upon Cook confined in an institution for the care of the insane the same rules of liability for his torts as would be imposed upon Cook allowed, unattended, to roam the streets.

Present — TAYLOR, P. J., HARRIS, McCURN, LARKIN and LOVE, JJ.

Judgment and order reversed on the law and facts and a new trial granted, with costs to the appellant to abide the event. [See *post,* p. 941.]