JOHNNIE LOUISE BURROWS *v.* HAWAIIAN TRUST
COMPANY, LTD., EXECUTOR OF THE WILL OF
DOROTHY HOPE KEMP, ALSO KNOWN AS
DOROTHY KEMP, DECEASED.

No. 4460.

AUGUST 31, 1966.

RICHARDSON, C.J., CASSIDY, WIRTZ,
LEWIS AND MIZUHA, JJ.

OPINION OF THE COURT BY LEWIS, J.

This appeal primarily presents the question of assumption of risk by a private duty registered nurse whose patient, an alcoholic, becomes violent.

Suit was instituted by the nurse for an assault and battery by the patient, who allegedly struck the nurse on the head with a table lamp. The jury found for defendant, the patient, and plaintiff appealed from the judgment entered on the verdict. Subsequently the patient died and her executor was substituted as defendant. Both the patient and her executor will be referred to as "defendant" herein, as occasion arises.

As affirmative defenses, defendant pleaded assumption of risk and contributory negligence. Both figured in the court's charge. Instructions given and refused constitute the sole basis for the appeal.

As to assumption of risk, the court over objection charged the jury as requested by defendant:

*Defendant's Requested Instruction No. 9, given.*

"You are instructed that if you find the plaintiff was fully aware of the risk of injury to which she was exposing herself at the time she alleges to have been injured, and voluntarily assumed that risk, then the defendant is not liable for any injuries which the plaintiff may have received, and your verdict must be for the defendant."

The court refused to charge as requested by plaintiff:

*Plaintiff's Requested Instruction No. 13, refused.*

"I instruct you as a matter of law that the plaintiff did not assume the risk of an assault and battery upon her by accepting employment as a private duty nurse."

There was evidence tending to show that when plaintiff took the case she thought it was a cardiac case. But according to her own evidence, on her first day on the case she was told by the attending physician that she was "nursing acute alcoholism," that the doctor had urged hospitalization but the patient, herself a physician, had refused it, and that the doctor was prepared to transfer the patient to the hospital if there was "any difficulty at all," which plaintiff understood to mean trouble in managing the patient.

Considered with defendant's No. 9, plaintiff's No. 13 would have had a proper function to perform in clarifying the concept of "voluntar[y]" assumption of risk if No. 13 had been more fully stated. As drafted it was not well adapted to the purpose, since it spoke only of the initial acceptance of the employment and not of the nurse's rights and duties when she became "aware of the risk of injury to which she was exposing herself," to use the language of defendant's No. 9. Considered as an instruction addressed solely to the situation which obtained when plaintiff accepted the case without knowledge of the patient's true condition plaintiff's instruction likewise was incomplete in failing to point out that it was confined to that situation and rested on the jury's finding of plaintiff's ignorance of the patient's true condition when she accepted the case. On the record as a whole, the defense of assumption of risk did not rest on mere acceptance of the employment. However, in view of the conclusions reached in this opinion as to defendant's No. 9, we need not decide on whom rested the burden of amplifying plain-

tiff's instruction. We turn now to consideration of defendant's No. 9. Plaintiff contends not only that the doctrine of assumption of risk was wholly inapplicable, but also that the instruction was inapplicable in the light of the evidence.

We start with the premise that defendant was insane at the time of the incident. Plaintiff has briefed the case on that premise. Defendant averred in her answer that at the time of the alleged assault and battery she was "of unsound mind, as Plaintiff well knew." This, it was claimed in the answer, constituted a defense in that defendant "lacked the mental capacity to perform such acts." Plaintiff thereafter amended the complaint so as to add to the original averment of a wilful attack the alternative allegation that "defendant so struck plaintiff while suffering from a mental disorder."

The issue raised by the defense of lack of mental capacity has been resolved. By agreement, the court instructed the jury that "a person who is insane or mentally deranged or suffering delusions and hallucinations from a mental disorder resulting from alcohol or any other cause, is legally responsible to another person for any injuries or damages caused by an assault and battery." Though the issue has been thus resolved, plaintiff nevertheless has argued at length that an insane person is liable for his torts, including assault and battery.[1] This argument is carried over to the issue under consideration to support the argument that insane persons are only entitled to the same defenses as sane persons, it being contended that neither contributory negligence nor assumption of risk is a defense to a cause of action for assault and battery, and that the same holds true here despite defendant's condition.

---

[1] Plaintiff, however, recognizes that such liability is limited to compensatory damages.

The incident in question occurred on the third day plaintiff was on the case as one of three nurses, each on eight hour duty, plaintiff's shift being from 3 to 11 p.m. Plaintiff testified, and we must proceed on the basis that the jury could have accepted it to be the fact, as follows: On the first day plaintiff was aware of the necessity of watching for withdrawal symptoms (symptoms of delirium tremens); on the second day she observed such symptoms and reported them to the doctor suggesting that the patient be admitted to the hospital, but the doctor still adhered to the patient's desire in the matter; she was aware that "when patients get like this, they get a superhuman strength," and indeed stayed on after her shift on the second day until the housekeeper returned in order that her relief, a young nurse, might not be alone with the patient, the only other occupant of the house being the patient's 92 year old father who was deaf and kept to his room in another part of the house; when alcoholics are experiencing withdrawal symptoms "they can become dangerous"; on the second day, by reason of the withdrawal symptoms she observed, she knew the patient could become violent; she knew from the first day that the housekeeper would be off duty on Thursday, plaintiff's third day on the case; when she reported for duty on that day she was told that the patient's condition had worsened and that she was hallucinating and showing paranoidal symptoms; on the third day the patient "was in the midst of the 'd.t.'s.' "

The nurse also found when reporting on the third day that a hospital bed with side rails had been delivered and was in use; and that the doctor, to whom the patient's worsened condition had been reported, had ordered the use of a posey belt, the purpose of which was to restrain the patient and keep her in bed. When the nurse applied the posey belt on leaving the room to get something for

the patient she found on her return that the patient was extremely belligerent; after this plaintiff left the room for the second time in order to start preparing dinner, intending to be gone ten minutes.

The case has been argued on the hypothesis that at this time plaintiff again applied the posey belt, which she had removed on returning to the room on the first occasion. There was evidence that a posey belt is not infallible, even the hospital type, and according to plaintiff the posey belt in use in the home was of an inferior type. However, according to plaintiff, "a patient has to do an awful lot of wiggling to get to these knots * * *," which secure the posey belt.

While plaintiff was working in the kitchen she heard a noise in the living room and found the patient out of bed. She testified that out of concern for her patient, she immediately went to her, a struggle ensued, and in the course of it she was struck on the head by a lamp which the patient held by the metal bulb receptacle and used as a club.

Defendant denied that the assault and battery occurred, though on cross-examination she testified: "I think it's possible." She had no recollection of the events of the third day. Defendant argues in this court that the jury "determined that [plaintiff] * * * had not received a blow at all." This point is not open to defendant. The verdict was a general verdict. No interrogatories were submitted to the jury under H.R.C.P., Rule 49(b). The jury may have found that the plaintiff was injured. There was ample evidence to permit of such finding. *Cf., Solomon* v. *Wong,* 34 Haw. 625, 631-32.

Three cases have been cited involving assault and battery by insane persons on persons caring for them. Only one of these cases, *Van Vooren* v. *Cook,* 273 App. Div. 88, 75 N.Y.S.2d 362, represents a reversal of a judgment on

the ground of erroneous submission of a defense to the jury. In *Van Vooren,* plaintiff was an untrained attendant in a hospital where defendant was confined. He had been employed there for only a few weeks. The defense submitted to the jury was "invitation to commit the assault." It was noted that this defense was not supported by New York citations, and the court furthermore found it not supported by the evidence. In our view, the opinion did not come to grips with the problem presented and is not convincing. There was a well reasoned dissent, pointing out that plaintiff had been specifically warned not to go to defendant's room alone, and that: "Since one of the main reasons for imposing liability upon lunatics for their torts is that such a course tends to make those who should have an interest in the insane person, and so possibly interested in his property, watchful of him, certainly that basis is not present here. It seems harsh to impose upon Cook confined in an institution for the care of the insane the same rules of liability for his torts as would be imposed upon Cook allowed, unattended, to roam the streets." (75 N.Y.S.2d at 367.)

In *McGuire* v. *Almy,* 297 Mass. 323, 8 N.E.2d 760, the plaintiff was a private duty registered nurse, who had been on the case for fourteen months. The defendant was an insane person. After verdict for the plaintiff, the defendant appealed contending that she was "not liable because the plaintiff, by undertaking to care for the defendant with knowledge of the defendant's condition and by walking into the room in spite of the defendant's threat under the circumstances shown, consented to the injury, or, as the defendant puts it, assumed the risk, both contractually and voluntarily." (8 N.E.2d at 763.) The court did not decide whether there was such a defense in law, holding only that if there was such a defense the evidence did not

call for direction of a verdict for defendant on this ground. The court stated:

"* * * Although the plaintiff knew when she was employed that the defendant was a mental case, and despite some show of hostility and some violent and unruly conduct, there was no evidence of any previous attack or even of any serious threat against anyone. The plaintiff had taken care of the defendant for 'fourteen months or so.' We think that the danger of actual physical injury was not, as matter of law, plain and obvious up to the time when the plaintiff entered the room on the occasion of the assault. But by that time an emergency had been created. The defendant was breaking up the furniture, and it could have been found that the plaintiff reasonably feared that the defendant would do harm to herself. Something had to be done about it. The plaintiff had assumed the duty of caring for the defendant. We think that a reasonable attempt on her part to perform that duty under the peculiar circumstances brought about by the defendant's own act did not necessarily indicate a voluntary consent to be injured. Consent does not always follow from the intentional incurring of risk. 'The degree of danger, the stress of circumstances, the expectation or hope that others will fully perform the duties resting on them, may all have to be considered.' [Citations.]" (8 N.E.2d at 763-64.)

*Mullen* v. *Bruce,* 168 Cal. App. 2d 494, 335 P.2d 945, most closely resembles the present case on the facts. Plaintiff was a registered nurse who undertook the care of defendant, a patient at a sanitarium, as a special duty nurse. When she undertook the case she was informed that the patient, an alcoholic, was in delirium tremens and was violent and unmanageable. Plaintiff was injured in a struggle which ensued when she endeavored to stop

defendant from leaving the sanitarium to go home in her gown, barefoot. The case was tried without a jury, resulting in judgment for plaintiff. Affirming, the court said:

"It cannot be said, from the evidence, as a matter of law, that plaintiff assumed the risk which here resulted in her injury. This was a factual question for the determination of the court. *Ching Yee* v. *Dy Foon,* 143 Cal.App.2d 129, 138, 299 P.2d 668; *DeGraf* v. *Anglo California National Bank,* 14 Cal.2d 87, 101, 92 P.2d 899.

"Plaintiff, when first called, was not informed of any danger that might result in accepting the assignment. She was registered at this sanitarium as being subject to call for private duty. When informed of the fact at the sanitarium that defendant patient had delirium tremens she could have refused the case but this may well have affected her standing with the sanitarium and medical profession in the future, respecting other calls. She had been called to duty at that sanitarium on previous cases for the care of such patients without being assaulted, and she may well not have realized, from what was told her, that she would be thus treated if she accepted the professional duty assigned to her.

"In *Ching Yee* v. *Dy Foon, supra* [143 Cal.App.2d 129, 299 P.2d 673], it was held that an instruction there given on this subject was proper. It was there said:

" 'First, the person in question must have actual knowledge of the danger. Second, she must have freedom of choice. This freedom of choice must come from circumstances that provide her a reasonable opportunity, without violating any legal or moral duty, to safely refuse to expose herself to the danger in question.' "

(335 P.2d at 948.)

While both *McGuire* and *Mullen* involve private duty registered nurses, neither case affords an explanation of the contractual status of such a nurse.[2] That is the starting point for consideration of assumption of risk as a defense. This defense is an offshoot of the common law rule that *"volenti non fit injuria"*—to one who consents no wrong is done. Restatement (Second), *Torts,* § 496 A, comment *b*. Consent is a defense to assault and battery cases as well as to others, unless the consent is against the policy of the law. Restatement (Second), *Torts,* § 496 B, comment *b,* Restatement, *Torts,* § 892; 23 So. Cal. L. Rev. 135.

A private duty registered nurse is an independent contractor. *Moody* v. *Industrial Acc. Comm'n,* 204 Cal. 668, 269 Pac. 542; Annot., 60 A.L.R. 303. Her contract, like that of a physician, consists in an undertaking to employ the skill, knowledge and care commonly possessed and exercised by members of the profession—*i.e.,* the nursing profession—according to the circumstances of the case. *Cf., Cooper* v. *National Motor Bearing Co.,* 136 Cal. App. 2d 229, 288 P.2d 581; Annot., 51 A.L.R.2d 970; *cf.,* as to physicians, *Lyu* v. *Shinn,* 40 Haw. 198, 205-06; Prosser, *Torts,* § 31 at 133 (2d ed.) ; 41 Am. Jur., *Physicians and Surgeons,* § 82. Thus, in the absence of evidence that the arrangement was not the usual one, we must proceed on the premise that plaintiff's undertaking was one of due care according to the standards of her profession under the circumstances. That duty of due care

---

[2] It is in situations involving contractual relations that the doctrine of assumption of risk has been deemed the most acceptable by critics of the doctrine. See 2 Harper & James, *Torts,* § 21.8, 1191. Some courts confine the defense to that area, *e.g., Felgner* v. *Anderson,* 375 Mich. 23, 133 N.W.2d 136, 153. Others do not, *e.g., Reed* v. *Styron,* 69 N.M. 262, 365 P.2d 912, 914; *Fowler* v. *Liquid Carbonic Corp.,* 121 So. 2d 49, 51. See Annot., 82 A.L.R.2d 1218, 1222-23. This court has not ruled on the exact point. *Cf., Bulatao* v. *Kauai Motors, Ltd.,* 49 Haw. 1, 15, 406 P.2d 887, 895.

encompassed the taking of proper precautions. However, she did not guarantee the results. While she could not recover for her own breach of duty, she was not the insurer of her own safety. The contract was one of limited assumption of risk. Limited consent is an accepted concept. See Prosser, *Torts,* § 18 at 84 (2d ed.).

It is our conclusion that a private duty registered nurse assumes the risk of injury by an insane patient if by the exercise of due care she should have prevented the injury,[3] or if the hazard was one which it was not reasonable for her to accept in the performance of her duty as a nurse. Upon review of *McGuire* v. *Almy, supra,* 297 Mass. 323, 8 N.E.2d 760, and *Mullen* v. *Bruce, supra,* 168 Cal. App. 2d 494, 335 P.2d 945, it appears that the scope of the nurse's duty figured largely in each case. What we have in this type of situation is the defense of contributory negligence creeping in through the back door under the guise of assumed risk. The two defenses often overlap. Restatement (Second), *Torts,* § 496 A, comment *d.*

In *Bulatao* v. *Kauai Motors, Ltd., supra,* 49 Haw. 1, 15, we noted this overlap of the defenses of assumption of risk and contributory negligence and stated: "There being no distinguishing feature whereby the defense of assumption of risk has a different application in the present case from the defense of contributory negligence,

---

[3] There are cases holding that in certain other relationships there is a duty to exercise due care to restrain an insane person from inflicting injury. *Mounds Park Hosp.* v. *Von Eye,* 245 F.2d 756 (8th Cir.) ; Annot., 70 A.L.R.2d 347 (involving injuries to the patient herself) ; *Emery* v. *Littlejohn,* 83 Wash. 334, 145 Pac. 423 (liability of mother, who had assumed responsibility, to third person for act of insane son) ; *Jones* v. *State,* 267 App. Div. 254, 45 N.Y.S.2d 404, and *Finkel* v. *State,* 37 Misc. 2d 757, 237 N.Y.S.2d 66 (Ct. Cl.) (liability of State for acts of insane escaper from institution). It would be an anomaly if a person having such responsibility were to be allowed to recover for his own injuries without consideration being given to the question whether he should have prevented such injuries and the consequent tort liability on the part of the insane person whom it was his duty to protect. However, we here confine ourselves to the contractual relationship which is before us.

we join the growing number of courts which decline to permit reliance on both of these defenses where one would serve." *Cf., Meistrich* v. *Casino Arena Attractions, Inc.,* 31 N.J. 44, 155 A.2d 90; *Ritter* v. *Beals,* 225 Or. 504, 358 P.2d 1080. In the present case the jury, over plaintiff's objection, was given defendant's requested instruction No. 11, as follows:

> *Defendant's Requested Instruction No. 11, given.*
>
> "The Court instructs you that negligence is a failure to use ordinary care, that is, failure to do what a reasonable and prudent person would ordinarily have done under the same or similar circumstances, or doing what such a person under the same or similar circumstances would not have done.
>
> "If from the preponderance of the evidence in this case, you find that the plaintiff was negligent and if such negligence contributed proximately to plaintiff's injury, then the plaintiff cannot recover."

Thereafter an instruction previously withdrawn by plaintiff was given by agreement as follows:

> *Plaintiff's Requested Instruction No. 20, given.*
>
> "When a person's lawful employment requires that he [*sic*] work in a dangerous situation that involves possibilities of injury in order to carry on her occupation, or requires that in the line of her duty she takes risks which ordinarily a reasonably prudent person would avoid, the necessities of such a situation, insofar as they limit the caution that she is able to take for her own safety, lessen the amount of caution required of her by law in the exercise of ordinary care."

These two instructions, taken together, informed the jury as to the essential points on which the case turned if the assault and battery in fact occurred. Under the doctrine of assumption of risk, as heretofore developed,

there was a question for the jury as to whether the nurse proceeded with such want of due care as to defeat her cause of action. Had it not been for defendant's No. 9 we would see no prejudice to plaintiff by reason of this factual issue having been submitted in the form of instructions on the subject matter of contributory negligence, even though we conclude that the defense of assumption of risk is the proper one in this particular case. That is, contributory negligence, as such, is not a defense to assault and battery.

The difficulty is that defendant's No. 9, when taken together with the instructions on contributory negligence, could only have been understood as charging the jury that plaintiff had no recourse for any risk she knowingly undertook. Defendant's position, as argued in this court, is that such is the law.[4] As seen, this is incorrect. Plaintiff did not assume the risk of injury which she reasonably hazarded in the performance of her duty as a nurse, and which ensued despite her fulfillment of her obligation of due care.

Had there been no instruction on contributory negligence the case might stand differently. Defendant's No. 9 might then be deemed ambiguous, making it incumbent on plaintiff to seek clarification of the instruction.[5] As

---

[4] According to defendant, plaintiff "assumed the risk when she realized she was handling an alcoholic rather than a cardiac patient"; "she knew that people having withdrawal symptoms become irrational"; "she certainly assumed the risk of the effects of the ailment she was treating, namely, the hallucinations, the deranged mind and possible violence." Defendant further argues, in reference to the time when the patient appeared in the living room with the lamp in her hand, that the nurse "assumed the risk that she could handle the woman if she [the patient] swung at her." Contributory negligence, according to defendant, was pleaded only to counter plaintiff's amended complaint alleging as an alternative to the averment of a wilful attack the allegation that the attack was made while plaintiff was suffering from a mental disorder.

[5] Plaintiff made only the general objection that the instruction was an incorrect statement of the law.

the case stands, No. 9 manifestly was intended to, and did, introduce a new and erroneous concept under which the reasonableness of plaintiff's conduct played no part. This was the consequence of submitting to the jury the defense of contributory negligence along with the defense of assumption of risk. Considering the whole record, we find there was prejudicial error in the giving of defendant's No. 9.

We note that, by agreement, plaintiff was allowed an instruction that "the defendant in this case is liable to the plaintiff, Johnnie Louise Burrows, if you find by a preponderance of evidence the plaintiff was struck as she testified and suffered injuries as a result," also an instruction that defendant "is liable to plaintiff, Johnnie Louise Burrows, for injuries suffered if you find she knowingly committed an assault and battery upon plaintiff while plaintiff was attempting to care for her as a nurse in connection with defendant's illness." The effect of these instructions was not argued here. If we could conclude that these instructions cured the error above found we would affirm. But we cannot so hold. It is a case of conflicting instructions, in which one set does not cure the error in the other set. *Borowsky* v. *Honolulu Rapid Transit Co.*, 29 Haw. 188, 199.

The views above expressed make it unnecessary to consider the remaining specifications of error.

Reversed and remanded for a new trial.

*Harriet Bouslog* (*Bouslog & Symonds* of counsel) for plaintiff-appellant.

*Robert M. Rothwell* (*Hoddick, Rothwell & Chang* of counsel) for defendant-appellee.