2014 OK CIV APP 99

**Luella LEGGETT, Plaintiff/Appellee,**

v.

**Charles R. LEGGETT, Individually, and as Trustee of the Daniel B. Leggett Revocable Trust Dated 4–12, 2002, as amended January 16, 2004, Defendant/Appellant.**

**No. 110,937.**

Court of Civil Appeals of Oklahoma, Division No. 1.

Nov. 19, 2014.

Kathryn A. Herwig, Williams, Reents, De-Carlo & Herwig, Tulsa, Oklahoma, for Plaintiff/Appellee.

J. Ronald Wright, Wright, Stout & Wilburn, P.L.L.C., Muskogee, Oklahoma, for Defendant/Appellant.

WM. C. HETHERINGTON, JR., Vice–Chief Judge.

¶ 1 Charles R. Leggett, Individually and as Trustee of the Daniel B. Leggett Revocable Trust dated April 12, 2002 as amended January 16, 2004 (Trustee), appeals from a trial court order filed July 19, 2012,[1] removing

---

1. The appealed from order of July 19, 2012, includes this language: "IT IS THEREFORE ORDERED ADJUDGED AND DECREED by the Court that the judgment as set forth includes the Court's Order of October 6, 2010, and is a final judgment of the Court." Trustee also appeals the 2010 order as "incorporated as part of the Final Judgment in this case," and asserts propositions of error from the 2010 order even though the 2010 Order is not referred to in the Amended Petition In Error or attached. The only Order referred to in the Amended Petition In Error is

Trustee for various reasons, naming Gary Leggett as successor trustee and extending an April, 2010 order paying quarterly payments of approximately $3,000 in Trust income to Plaintiff Luella Leggett (Appellee), with the income payments to be "reconciled annually". We find the trial court did not err in the 2010 journal entry by ordering reimbursement to Appellee for nursing home expenses and medical expenses paid out of joint tenancy with right of survivorship accounts, its award to Appellee of the balance of the 2009 Trust income and its removal of Charles R. Leggett as Trustee, and **affirm.**

### FACTS

¶ 2 This appeal requires extensive fact review. Daniel B. Leggett and Appellee were married June 2, 2002. Prior to their marriage, they executed an Antenuptial Agreement [2] on February 12, 2002. Daniel B. Leggett had created an Inter Vivos Revocable Trust (Trust), dated April 12, 2002, naming himself as Trustee and Charles B. Leggett as Successor Trustee. The Trust was amended in 2004 to reflect the marriage, distributing property to Appellee and others, and providing for Appellee to receive "net income" determined by the terms of the Trust for life. Daniel entered a nursing home in April, 2007, where he remained until his death in April, 2009. During the marriage, Trust income was deposited into and all living expenses were paid out of a joint tenancy with rights of survivorship account.[3] During the marriage and prior to Daniel moving to a nursing home, Daniel and Appellee deposited their social security checks into this account.[4] They also deposited income from Daniel's Edward Jones account which he had transferred to the Trust, and was its largest asset. The amended Trust allowed for Appellee to receive the homestead and ten acres, some listed personal property and net income from the assets of Trust for life. Then upon her death, the residuary estate was to pass in equal shares to nieces and nephews, one of whom was Trustee, Charles R. Leggett.

¶ 3 Litigation began in May, 2007 when Appellee filed a request for temporary injunction against Trustee because at about the time Daniel was moved to the nursing home, Trustee opened an account and began depositing money into that account as promissory note payments towards a note Trustee owed to Daniel. This account triggered a probate upon Daniel's death because Trustee opened this account in Daniel's name. Appellee alleged that by doing this, Trustee was interfering with and manipulating joint tenancy funds, not owned by Trust. The trial court entered an injunctive order enjoining Trustee

the July 19, 2012 Journal Entry of Judgment. We find by the wording in this judgment, and the fact that the 2010 order was certified by the trial court for immediate appeal pursuant to "12 O.S. § 592(b)(3)" (sic), the final 2012 judgment includes the 2010 order as a part of the "final judgment" in this case and its decrees are appropriate for appeal review. According to 12 O.S. § 952(b)(3), the 2010 order is properly before this court as an order that was not appealed from at the time. "[T]his section shall not preclude him from asserting error in the order after the judgment or final order is rendered." *Id.*

**2.** The Antenuptial Agreement is included in the record as "Exhibit 14" to Plaintiff's Brief In Support Of Invoking The Dispositive Provisions of The Daniel B. Leggett Revocable Trust. (Designated Record page 163).

**3.** Appellee's response brief, page seven, argues that one account was once in Daniel's name only and changed by him after the marriage to a joint tenancy account at First National Bank and Trust of Okmulgee, account numbered 5003694, and that it was a listed account as Daniel's

separate property in the Exhibit "A", "Financial Disclosure Statement, Daniel B. Leggett" in the Antenuptial Agreement. The Antenuptial Agreement in the record shows listed as his financial declaration a savings account # 44–1210–2 and a checking account # 44–0920–7 at First National Bank and Trust of Okmulgee. It does not list an account numbered 5003694. We assume from all the evidence that this numbered account became the above referenced joint tenancy checking account. While we acknowledge there are two joint tenancy accounts, we refer only to the joint tenancy checking account in this opinion from which expenses were paid during the marriage by Appellee and Daniel, and as "continued" by court order after litigation began starting with the June 1, 2007 Minute Order.

**4.** The record testimony indicates Appellee testified that once Daniel was placed in the nursing home, his social security checks were assigned directly to the nursing home and were no longer deposited into the joint account. Appellee further testified she did not personally pay social security money totaling "$30,120" to the nursing home.

from blocking or interfering with Appellee's access to the use of the joint bank accounts, attempting to destroy the joint tenancy status of the accounts and from interfering with the continued deposits of income into the joint tenancy accounts. Appellee was enjoined from loaning, giving away or in anyway disposing of any monies, considered as large withdrawals which she was prohibited from making, together with an order for Appellee to continue to pay all of Daniel's nursing home and medical expenses from these accounts subject to further order of the trial court.

¶ 4 Later after Daniel's death in April, 2009, Appellee made demand upon Trustee to pay all funeral expenses and final expenses, and to deed her the marital residence. She also asked to continue to receive her life estate income from Trust and, asked to be reimbursed out of Trust assets for what Appellee claimed had been paid with funds she owned for the nursing home care, medical expenses and for the funeral when Trustee failed to pay. When these requests were not complied with, Appellee filed a Petition and Motion for Removal of Trustee, asking to be reimbursed for the nursing home and funeral expenses and to compel continued payment of the net income of the residuary Trust. A trial court "Minute Order" of November 4, 2009, ordered Trustee to reimburse Appellee for the funeral expenses and for Trustee and Appellee to determine the net income from Trust she was to then begin receiving. Trustee recites in his brief the content of the April 14, 2010 Minute Order: [5]

a. Beginning April, 2010, Charles to make quarterly payments in the amount of $3,000.00 to Luella from the income of said Trust, with the income payments to be reconciled annually;

b. A notation that Luella has not been provided Trust income for 2009, and that Charles and Luella disputed what constituted appropriate expenses for determination for Trust income;

c. Within thirty (30) days of April 14, 2010, the parties were to brief three issues for the Court's determination as to the following:

i. What constitutes appropriate expenses, thereby determining net income payable to Luella for 2009;

ii. A determination as to Luella's claim for reimbursement from the Trust for Highland Park Manor and medical expenses paid from joint bank accounts rather than from the Trust.

¶ 5 After a hearing, the result was the October 6, 2010 order determining 2009 net income from Trust owed to Appellee to be $11,813.83. The court also ordered that Appellee be reimbursed out of Trust $81,251.00 for nursing home expenses and $4,975.90 for medical expenses the trial court found had been paid by Appellee out of joint account funds.

¶ 6 The trial court then removed Trustee after Appellee filed an amended petition which alleged Trustee's conflict as a contingent beneficiary, his continued refusal to pay her $3,000 quarterly payments out of Trust and his refusal to provide annual accountings and reconciliation of Trust account asset income and expenses.

¶ 7 The final order was the July 19, 2012 Final Journal Entry of Judgment from which Trustee brings this appeal.

## STANDARD OF REVIEW

¶ 8 "The subject of trusts and the control of trust estates are cognizable only by courts of equity." *In re Lorice T. Wallace Revocable Trust*, 2009 OK 34, ¶ 2, 219 P.3d 536, 537 (*quoting Peyton v. McCaslin*, 1966 OK 4, ¶ 11, 417 P.2d 316, 320). In an equity case, the Court will examine the whole record and weigh the evidence, but the trial court's findings will not be disturbed in that review unless they are clearly against the weight of the evidence or some governing principle of law. *Estate of Sneed*, 1998 OK 8, ¶ 8, 953 P.2d 1111, 1115. Questions of law are reviewed *de novo*, which involves a plenary, independent and non-deferential examina-

---

5. The quote is from Successor Trustee's brief as a recitation of the trial court hand-written Minute Order, which also included: "Funeral Expenses reimbursed to Plaintiff by Defendant on March 22, 2010. Reconciliations provided by each party".

tion of a trial court's legal rulings. *Jackson v. Jackson*, 2002 OK 25, ¶ 2, 45 P.3d 418, 422.

## ANALYSIS

### Appellee's Claim For Reimbursement

¶ 9 We must first determine if Appellee was entitled to reimbursement for expenses paid out of the joint tenancy account. The trial court ruling relies on the terms of Trust that indicate these expenses were to be paid out of Trust principal and not out of Appellee's joint tenancy account Trust life income. Trustee argues the trial court erred by not recognizing from the beginning, the terms of the Antenuptial Agreement and Trustee's argument that these funds never lost their separate property character, remained Daniel's separate funds even into the joint tenancy account, which precludes Appellee from reimbursement.

¶ 10 The history of this marriage makes clear that after the Antenuptial Agreement was signed, these joint tenancy accounts were opened by the Leggetts to accept income from the Trust, intended to be joint tenancy funds, out of which living expenses were paid before and after Daniel became ill and later placed in the nursing home. Trustee indicates by argument, that the original June 1, 2007 Minute Order was the first time Daniel's "separate income" was ordered paid into the joint tenancy account and then ordered used to pay nursing home and other expenses. Trustee's proposition argues that all along, even before the June 2007 order, all income funds being transferred to the joint tenancy account were all Daniel's separate funds. There is no dispute the bulk of the income from Trust came from Daniel's original assets, and both social security checks were deposited into one or both of these accounts, at least until Daniel entered the nursing home. It is also clear from the

wording of the June 1, 2007 Minute Order, the trial court recognized how the joint tenancy accounts had been funded and used before litigation began when it said:

> That a Temporary Injunction is hereby GRANTED which enjoins the Defendant from blocking or interfering with Plaintiff's access to and use of the bank accounts described in said Petition; or attempting to destroy the joint tenancy of the ownership of the accounts or their contents; or interfering with the continued depositing of all income thereto; provided further that Plaintiff is prohibited from loaning, giving away, or otherwise disposing of any of said monies, and further prohibited from making any large withdrawals, and further that Plaintiff shall continue to pay all of Daniel Leggett's nursing home and medical expenses from said accounts pending further Order of this Court.

¶ 11 Appellee asked for reimbursement of $86,226.90 made up of $4,975.90 for medical expenses and $81,251 for nursing home expenses, of which $30,000 was paid by way of Daniel's social security checks arguably paid directly to the nursing home. The record evidence is in dispute as to whether or not Daniel's social security checks were assigned and/or paid directly to the nursing home or, were deposited into the joint tenancy checking account and then nursing home expenses paid out of that account.[6] Trustee's evidence and testimony supports his argument that twenty-four payments of $1,250 were made by way of Daniel's social security check direct payments to the nursing home, totaling $30,000 of the $86,226.90 reimbursement claim.[7]

¶ 12 The terms of the Antenuptial Agreement allow Daniel or Luella the flexibility to own either previously separate property or property of the marriage in joint tenancy. Paragraph "10" page ten says:

> deposit into either account number "5003694" or "44–0920-7". The testimony does discuss that Daniel Leggett's "separate income" was to go into the joint tenancy account.

6. Appellee's Response Brief page 9 argues that Daniel's social security checks were never paid directly to the nursing home as Trustee argues, and were always deposited into the joint tenancy account. The brief refers to "See page 32, lines 1–8 of the Transcript of May 9, 2012, and page 40, lines 8–10 of same Transcript." The transcript portions referred to make no mention of where Daniel's social security checks were actually deposited and specifically no mention of

7. In Trustee's brief, he argues the amount paid to the nursing home by way of direct payments of Daniel's social security checks was $31,200.

*Jointly Owned Property. Without regard to the source of the funds with which it was acquired, or whose separate property it was earlier,* registration or record ownership of an asset in Daniel's and Luella's names together, whether as joint tenants with right of survivorship or as tenants in common, *shall constitute conclusive evidence* that they have an equal ownership interest in, and equal liability for any debts secured by, the asset, unless there is clear written evidence of a contrary intent. If the asset is owned in common (not as joint tenants with right of survivorship) the interest of each of Daniel and Luella shall be his or her separate property. If Daniel and Luella own the asset as joint tenants with right of survivorship then for purposes of Article IV hereof upon the death of a party while married, the entire property shall be the property (and any debt secured thereby shall become the obligation) of the survivor, *in addition to and not in reduction of* amounts due the survivor pursuant to Article IV, and for purposes of Article V hereof (divorce, etc.) each party shall be deemed to own his or her share (and to owe his or her share of the debt) as separate property. (Emphasis added)

¶ 13 Interpreting terms of an Antenuptial Agreement or Trust requires an examination of the particular facts and circumstances of the case, the language of the agreement and ultimately, is a quest to determine and follow the intent of the parties. *In re Marriage of Neundorf,* 2006 OK CIV APP 10, ¶ 11, 131 P.3d 142; citing *Hoefer v. Probasco,* 1921 OK 73, ¶¶ 0(1), 8, 196 P. 138, 139, and, *Estate of Yahola Burgess,* 1982 OK CIV APP 22, ¶ 16, 646 P.2d at 626. The law favors these agreements as fostering marriage. *Griffin v. Griffin,* 2004 OK CIV APP 58, ¶ 17, 94 P.3d 96.

¶ 14 According to the language of the agreement quoted above, we agree with Appellee's argument the facts of the case demonstrate an unqualified intent on the part of Daniel and Luella to create a joint tenancy with right of survivorship relationship after the marriage, and that Luella had every right as expressed by the terms of the Ante-

nuptial Agreement and the actions of the parties post marriage, to the use and ownership of these two accounts. This does not end the inquiry.

¶ 15 The next question posed is whether or not, in spite of Appellee's joint and survivor ownership of these account funds, is Appellee entitled to reimbursement, thus reducing Trust principal and the residual share distributable out of Trust to the remaining contingent beneficiaries? We answer this question in the affirmative.

¶ 16 We have already discussed the joint tenancy accounts were opened after creation of the Antenuptial Agreement and Trust, were not an asset of Trust, and were established for the purpose of paying all living and medical expenses during the marriage. The evidence shows the "Exhibit 4" court order of June 1, 2007 required income from Trust assets ordered transferred to the joint account and used to pay Daniel's nursing home and medical expenses. Appellee's testimony was that none of her separate funds were used to pay these expenses, but Trust asset income was clearly ordered transferred and used, and Appellee complied.

¶ 17 Trust provisions provide during Daniel's life and following his death:

Trustee shall hold, manage, invest, and reinvest the trust estate and shall collect the income therefrom and shall dispose of the *income and principal* as follows:

A. During the lifetime of Trustor, the Trustee shall pay and distribute to the Trustor *all of the income of the trust and as much of the principal* of the trust as is necessary to enable Trustor to live in his accustomed standard of living and to enable Trustor to satisfy all financial needs related to his support and medical care.

. . .

3.1 Upon the death of Trustor, the Successor Trustee shall distribute the assets and residue of the Trust estate as follows:

A. *Pay any and all debts, funeral expenses,* estate taxes, administration expenses, and other amounts due by Trustor or payable because of Trustor's death.

. . .

G. The rest, residue, and remainder of the Trust estate to be held in trust for the benefit of Luella Madeira and Luella Madeira shall receive the net income from the assets, of the Trust estate for her life. The net income from the assets of the Trust estate shall be the amount after payment of all taxes; including income taxes, ad valorem taxes, and personal taxes; costs of administration of the Trust estate; insurance costs; and maintenance costs of Trust assets. The maintenance of Trust assets shall be at the sole discretion of the Successor Trustee.

. . .

8.1 After the death of the Trustor, the Trustees shall pay out of the trust fund either (a) all of the following described taxes and expenses or (b) that portion of the following described taxes and expenses which the Trustees shall, in their uncontrolled discretion, deem to be fairly attributable to the property of the trust or which *the court having jurisdiction over the estate of the Trustor shall direct*, and shall charge said payments to the trust fund, to-wit:

A. Any and all death duties, federal and state, including interest and penalty, which may become due or payable by reason of the death of the Trustor;

B. Any and all estate and inheritances due or payable, including taxes due on property co-owned or owned in joint tenancy with any beneficiary of this Trust;

C. *Any and all expenses of the last illness, funeral, and burial of the Trustor, his debts,* and the cost of administration of his estate; and: (Emphasis Added)

. . .

*The Nursing Home and Medical Care Expenses*

¶ 18 The terms of Trust and actions of the parties before Daniel's death show a clear intent that Daniel's nursing home and medical expenses were to be paid from Trust assets and not from Trust income funds owned by Appellee and that would otherwise be paid into the joint accounts, net trust expenses as provided for in Trust. We find no error with the court's $86,226.90 reimbursement order as to nursing, medical care and medical expenses. Further, the greater weight of the evidence compels us to find, as to Daniel's social security income, he did not intend this income to be considered separate property and they both intended their social security income to be joint income and used for either of their needs for their lifetime, even if his checks were actually assigned directly to nursing home debt. Had Daniel intended otherwise, there would have been a transfer or assignment of his social security income as a trust asset. We do not find that to have been Daniel's intent, and his social security income was not separate property income.

*The 2009 Net Income From Trust* [8]

¶ 19 Paragraph 3.1 E of the First Amendment to the Daniel B. Leggett Revocable Trust Dated of (sic)April 12, 2002, provides:

E. The rest, residue, and remainder of the Trust estate to be held in trust for the benefit of Trustor's wife, Luella Leggett. It is the intent of Trustor that Luella Leggett shall receive the net income from the assets of the Trust estate for her life. The net income from the assets of the Trust estate shall be the amount after payment of all taxes; including income taxes, ad valorem taxes, and personal taxes; costs of administration of the Trust estate; insurance costs; and maintenance costs of Trust assets. The maintenance of Trust assets shall be at the sole discretion of the Successor Trustee.

**8.** Trustee and Appellee reached an agreement for 2010 and she was paid the equivalent of $1,000 per month with a later end of year adjustment that reflects expense deduction and resulted in an additional $3,000 per quarter payment for 2010 income.

¶ 20 It is clear from the record there was a need to have the trial court determine what trust expenses Trustee was to deduct from Appellee's life interest income for that year. The trial court heard evidence and adopted Appellee's position that she was entitled to $11,813.83. The trial court again heard evidence and argument on this issue and gave credit for the first quarterly income payment of $3,986.40 she did receive. The trial court award did not include deductions requested by Trustee for funeral expenses of $8,679.51 or Trustee's request to deduct attorney fees paid to Trustees's former attorney. The trial court award is not against the weight of the evidence and we find no error.

### Removal of Charles R. Leggett as Successor Trustee

■ ¶ 21 The record shows Trustee continued to refuse to regularly pay any net income to Appellee even though there was a disagreement about deductions for over a year. It took several written requests and court intervention to get funeral, medical and nursing home expenses paid. At one point after the entry of the April, 2010 court order, Trustee would not provide trust "reconciliations" or make payments to Appellee. There was clear hostility between Trustee and Appellee and Trustee was a contingent beneficiary of Trust. Transcripts show the trial court's concern about Trustee's interest as a beneficiary of Trust and possible influence on his conduct as antagonistic to Appellee. The court discusses various actions of Trustee he did not think were appropriate and later comments on his concerns about possible conflict when he says:

> So, I feel genuinely that there's got to be some type of a conflict being that Mr. Charles Leggett is soon to be, I guess, a beneficiary to the trust once Mrs. Leggett has passed. So I'm concerned about that, and appreciate the fact that you're trying to preserve the assets for yourself and your heirs. I think that's an obligation, something that you ought to be doing, which I think that you're doing.[9]

■ ¶ 22 A trial court has broad discretion to entertain removal of a trustee after hearing and fill such trustee vacancy. 60 O.S. §§ 175.39, 175.57. The discretion granted a trustee by trust is not without limits, and stands subject to removal where cause is shown. *Robinson v. Kirbie*, 1990 OK CIV APP 45, ¶ 8, 793 P.2d 315. Further, where a trustee fails to exercise powers granted, the court will intervene to direct payments for the care and maintenance of beneficiaries, and a trial court's judgment in review of a trustee's discretionary acts will not be disturbed on appeal unless clearly against the weight of the evidence. *Id., citing Restatement of Trusts 2d*, ¶¶ 197–199.

¶ 23 The trial court considered the evidence, and we find Trustee's removal order was not clearly against the weight of that evidence.

### AFFIRMED

JOPLIN, P.J., and BUETTNER, J., concur.